PONDER, Judge.
Defendant, Gulf States Utilities Company, appealed from the judgment awarding damages to the plaintiffs for injuries sustained by Todd Harris, the son of the other plaintiff. Plaintiffs appealed the findings of no liability by Bryant, the other defendant. The issues involved are:
1. The liability of defendants GSU and Bryant.
2. The contributory negligence of plaintiff.
3. Quantum.
We affirm.
A half completed home had been abandoned prior to its purchase by defendant Bryant. During construction, GSU had installed a pad-mounted (ground level) transformer box and energized it through an underground cable from a power source several hundred feet away. No electricity was ever supplied from the transformer box to the house. Temporary electrical service for construction was supplied from a separate source. When construction was abandoned, GSU de-energized the temporary electrical service but not the permanent transformer box.
After Bryant’s purchase, repeated acts of theft and vandalism reduced the house to a shambles. Bryant gave up any hopes of completing construction; he had not visited the property for several years prior to the accident. Although Bryant attempted to block access to the property with fences, gates and “no trespassing” signs, plaintiff and other young people regularly visited the property. Plaintiff and two witnesses testified in all the years they visited the property they were never asked to leave. Plaintiff said the only time he saw an adult on the property, he was given permission to stay.
There was some testimony that the transformer box had stood with the doors open for about four years prior to the accident. Weeds and vines surrounded the box; dead leaves filled the bottom.
On the day of the accident, plaintiff and a friend were walking through the proper *1272 ty. On approaching the box, plaintiff reached out and touched the energized breaker and received serious shocks and burns.
Plaintiff argues that both defendants are liable under a theory of negligence or in the alternative under a theory of strict liability. Plaintiff further contends the quantum of damages awarded by the trial court is insufficient.
Defendant GSU argues that it did not violate a duty to plaintiff, that it was not negligent, and that plaintiff was at fault in causing his own injury. Defendant GSU further argues the amount of the award is not supported by the evidence.
Defendant Bryant argues that he is not liable under either a theory of negligence or a theory of strict liability.
The trial court found GSU breached the duty of care owed to plaintiff by failing to inspect its equipment, so allowing the dangerous condition to continue to exist; that defendant Bryant acted reasonably under the circumstances in that he had no actual or constructive knowledge that the transformer was energized; and that plaintiff was guilty of no contributory negligence. The judgment was for $10,723.86 for medical expenses and $150,000.00 for pain, suffering, scarring, permanent disability and decreased earning ability.
The Issues
1. The liability of GSU
GSU argues that it is a reasonably safe practice to leave energized an out-of-service transformer box if it is securely locked. We agree. However, for at least four years prior to the accident in 1977, the box stood open, exposing the public to 7,620 volts of electricity. This was a breach of duty.[1] Because we find defendant GSU negligent, we find it unnecessary to address the question of strict liability.
2. The liability of Bryant.
The duty of an owner of land is to act reasonably under the circumstances, taking into account the expected presence and likelihood of injury to persons on the land. Shelton v. Aetna, 334 So.2d 406 (La.1976). We believe that defendant Bryant acted reasonably. He took various measures to keep people off of his property. He was aware of the presence of the transformer box but not of its dangerous condition. Bryant neither requested nor received electrical service. The cable which led from the power source to the transformer box was underground. Under these circumstances we affirm the trial court’s finding that Bryant was not negligent.
*1273 Plaintiff argues that defendant Bryant is strictly liable under Civil Code Articles 2317 or 2322.
Article 2317 provides for the liability of an owner or guardian of a thing in his custody or control for damages caused through its defect. Loescher v. Parr, 324 So.2d 441 (La.1975). We believe the transformer box owned and maintained by GSU was not sufficiently in the custody or control of defendant Bryant as to impose liability.
Article 2322 imposes liability upon the owner of a “building” to persons injured through its “ruin” whether due to a vice in its original construction or through his neglect to repair it. The jurisprudence has included “necessary appurtenances” to structures and movables made immovable by attachment, within the term “building” for purposes of the building-owner’s liability under Article 2322. Unity of ownership of the building and its appurtenances is not required for imposition of liability, Olsen v. Shell Oil Company, 365 So.2d 1285 (La. 1979). However, we believe the duty of care imposed by Article 2322 should not be extended to include liability for the “ruin” of a pad-mounted transformer box never connected to the main structure in any fashion.
3. The Contributory Negligence of Plaintiff
Defendants maintain that plaintiff’s recovery should be barred by his own contributory negligence in reaching into the transformer box and grabbing the energized breaker. They rely on Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976) and Kent v. Gulf States Utilities Company, La.App. First Circuit, No. 13,205 (May 5,1980).
In Cates, a 16 year old boy was held contributorily negligent for climbing a thirty-foot utility pole to cut and remove wire. Fault of the victim was also a bar to plaintiff’s recovery in Kent. Plaintiff, an eighteen-year old, was engaged in raking fresh concrete as part of a road construction project. The metal rake he was using was attached to a thirty foot aluminum pole. Plaintiff ignored repeated warnings of an overhead high voltage line. He deliberately rejected alternative methods of using the metal rake that would have eliminated the need to raise it.
Contributory negligence must be determined in the light of the circumstances of each case. The abandoned house and the overgrown property on which it was located had been used as an area of recreation for at least four years. The young people had played around the open transformer box with no apprehension of its being energized. There was no electricity in the abandoned house and no wires connected the box to the house. An expert in the field of electrical engineering testified he would have assumed that the transformer box was deenergized; we cannot find fault with the same assumption by a seventeen-year old boy.
We affirm the trial court’s holding that Todd Harris was free from negligence.
4. Quantum of Damages
Plaintiff suffered third and fourth degree burns to his right hand and toes. He underwent surgery four times for skin grafts, partial amputation of two toes, and debridement of necrotic tissue and muscle. He lost most of the muscle in the web between the thumb and index finger of his right hand. The hand is disfigured and claw-like in appearance. He suffered intense pain during his twenty-one day hospital stay. Although plaintiff has made a remarkable recovery his toes and hand still remain sensitive. His hand lacks the strength and agility necessary to use small hand tools. An orthopedic surgeon ascribed a twenty-eight per cent permanent partial disability to plaintiff’s right hand with sensory and muscle loss in the thumb and finger, a 16% partial disability to his right foot and a 4% partial disability to his left foot. Plaintiff could adapt to many functions and had done well considering the serious nature of his injuries.
*1274 We feel the trial court’s award of $10,-723.86 for medical expenses and $150,000.00 for pain, suffering, disfigurement, permanent disability and lost earning ability, while low, is within the discretion of the trial court and therefore affirm.
For the above reasons the judgment of the trial court is affirmed. Gulf States Utilities Company is cast with the costs.
AFFIRMED.
LOTTINGER, J., dissents and assigns written reasons.

.The United States Dept, of Commerce, Safety Rules for the Installation and Maintenance of Electric Supply and Communication. Lines, Sixth Edition, 1961, Sections 211, 213 and 214 A.
“211. INSTALLATION AND MAINTENANCE.
All electric supply and communication lines and equipment shall be installed and maintained so as to reduce hazards to life as far as practicable.”
“213. INSPECTION AND TESTS OF LINES AND EQUIPMENT.
******
B. When Out of Service.
1. LINES INFREQUENTLY USED.
Supply lines and equipment infrequently used shall be inspected to see that they are in safe condition for service.
2. LINES TEMPORARILY OUT OF SERVICE.
Lines temporarily out of service shall be maintained in such condition that a hazard will not be created.
3.LINES PERMANENTLY ABANDONED.
Lines permanently abandoned shall be removed or maintained in a safe condition.
Note: Overhead service drops to consumers are often disconnected without removal when the service is discontinued. This is considered good practice when it is undesirable to remove the service drop entirely.”
“214. ISOLATION AND GUARDING.
A. Current-carrying Parts.
To promote safety to the general public and to employees not authorized to approach conductors and other current-carrying parts of electric supply lines, such parts shall be arranged so as to provide adequate clearance from the ground or other space generally accessible, or shall be provided with guards so as to isolate them effectively from accidental contact by such persons.”