452 So.2d 1195 (1984)
Phillip W. HOUSE and Karen House
v.
Joe E. THOMPSON and ABC Insurance Company.
No. 83 CA 0695.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Writ Denied September 28, 1984.
*1196 Michael C. Palmintier, Baton Rouge, for plaintiff-appellee Phillip W. House and Karen House.
Joe E. Thompson, pro se.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Defendant appealed from an adverse judgment in a suit for damages arising from a "slip and fall", which occurred on premises owned by defendant and leased to plaintiff, Phillip House. Plaintiffs alleged that Karen House was climbing down an attic stairway when she slipped on water leaking from a defective air conditioning unit and fell, sustaining injury to her knee. Plaintiffs filed suit for damages on four *1197 theories of recovery: LSA-C.C. arts. 2315, 2317, 2322 and 2695.[1]
The case was tried to a jury. At the close of plaintiffs' presentation, when defendant[2] moved for a directed verdict, the trial judge granted the motion as to plaintiffs' case under LSA-C.C. arts. 2695 and 2317, but denied relief as to LSA-C.C. arts. 2322 and 2315. After defendant presented his evidence, the case was submitted to the jury solely on the art. 2322 theory of liability.[3] Judgment was rendered pursuant to jury verdict for $50,000.00 in favor of plaintiffs and against the defendant. On a motion for new trial, the trial court entered a remittitur for $27,500.00 or granted a new trial in the alternative. After plaintiff applied for writs and was ultimately denied, defendant appealed, asserting six assignments of error.
The issues in this case are: 1) whether the trial court erred in overruling defendant's motion for a directed verdict under LSA-C.C. arts. 2315 and 2322; 2) whether the trial court erred in allowing the jury to reconsider its answers to the interrogatories submitted to it; and 3) whether the jury erred in its determination that (a) the leased premises were defective within the meaning of LSA-C.C. art. 2322, (b) Mrs. House's injuries were caused by that defect, (c) plaintiffs were not barred from recovery by their own fault, and (d) defendant knew or should have known of the defect or had notice of the defect and failed to fix it within a reasonable time.
We affirm.
The central air conditioning unit in the house leased by plaintiffs from defendant was located in the attic, accessible only by a collapsible stairway built into the attic floor. At the time of the events precipitating this suit, the unit was at least 8 or 9 years old. Underneath the unit's evaporator/condensor coil, an emergency overflow pan was attached. This pan was designed to catch dripping water condensed from the moisture in the air by the coil. Attached to this pan was a device called a float switch which, triggered by rising water, would shut off the air conditioning unit to prevent overflow from the drain pan.
Between the overflow pan and the coil was a second drain pan. This pan was not an original component of the unit but was instead a "jury-rigged" device commonly used as a stop-gap measure to save the expense of replacing a coil when it malfunctioned. Connected to the secondary drain pan was a drain pipe, intended to drain off excess water gathered in that pan. In the event of overflow or malfunction in the secondary drain pan, the overflow pan was intended to catch the water.
This unit began to malfunction, as the coil began to produce an excessive amount of water, rapidly filling the emergency overflow pan and causing the unit to cut off. Plaintiffs called defendant immediately to inform him of the problem but defendant did not complete repairs to the unit *1198 until over two weeks later. In the meantime, to obtain some relief from the heat, plaintiffs continued to operate the cooling unit at intervals by periodically climbing the attic stairs and draining the water from the emergency overflow pan.
At some point water began leaking from the unit to the attic floor. Plaintiffs testified that water began to drip to the attic stairs and that they informed defendant of that fact as soon as they noticed it. Defendant testified that he was eventually told of leaking water, but that he was never informed it was reaching the stairs. There was also conflicting testimony about whether defendant ever told plaintiffs they could operate the unit by periodically draining the overflow pan. In any case, two to three days before the unit was repaired Mrs. House was descending from the attic with a small tub of drainage water when she slipped and fell down the stairs.
In his first assignment of error, defendant contends that the trial judge erred in overruling his motion for a directed verdict under LSA-C.C. arts. 2315 and 2322. Under LSA-C.C.P. art. 1810, the trial judge has much discretion in determining whether or not a motion for directed verdict should be granted. Vallery v. All American Life Ins. Co., 429 So.2d 513 (La. App. 3d Cir.1983), writ denied 434 So.2d 1091, amended 434 So.2d 1100; Pellerin v. Tudor Construction Co., 414 So.2d 403 (La.App. 1st Cir.1982), writ denied 420 So.2d 455. We find no abuse by the trial court.
Defendant next assigns as error the trial judge's action in allowing the jury to reconsider its answers to the interrogatories submitted to it; he also urges as error the trial judge's refusal to grant a mistrial moved by defendant on that ground.
The trial judge instructed the jury as to the defenses available to defendant, including contractual release as provided for in LSA-R.S. 9:3221.[4] Thereafter, with brief explanation, the trial court submitted the following interrogatories, which were answered as follows:
1. Was Mr. Thompson the owner of the premises? Yes.
2. Were the premises defective? Yes.
3. Did a defect in the premises cause Mrs. House's injuries? Yes.
4. Was Mrs. House fully aware that the defect in the premises was so dangerous that the premises could not be used even with the exercise of due care, and nonetheless proceeded to use them and was injured? No.
5. Did Mr. House lease the premises from Mr. Thompson and in the lease assume responsibility for the condition of the premises? No.
6. Was Mrs. House on the premises with consent of Mr. House? Yes.
7. What amount is Mrs. House entitled to recover for her injuries, if any? $50,000
Before submitting the interrogatories, the trial court instructed the jury as follows:
"The other defense that Mr. Thompson has raised is that the lessee, the person who signed the leaseMr. Househas assumed responsibility for the condition of the premises just releasing him, Mr. Thompson, of the responsibility to Mr. House or anyone else on the premises with the permission of the lessee.
"Now R.S. 9:3221 reads, and I quote, `The owner of the premises leased under a contract, written or oral, it makes no difference, whereby the lessee, the person leasing it, assumes responsibility for their condition, is not liable for injury caused by any defect therein to the lessee or to anyone on the premises, who derives his or her rights to be there from the lessee, unless the owner knew or *1199 should have known of the defect and had received notice thereof and failed to remedy it within a reasonable time.' The law provides that Mr. House is the lessee; he signed the lease. The law provides that Mrs. House is a third person. Now the question is, is she on the premises with the consent of her husband, the lessee? And with regard to this particular defense, there has to be agreed upon, either orally or in writing, Mr. Thompson has this particular burden and must convince you by a preponderance of the evidence of these items, (1) that there was a contract that provided this language, either written or oral, between him and the lessee; number (2) that the defect was in the premises leased and not of course somewhere else; and, number (3) that the agreement clearly placed the responsibility for the defect on the lessee, Mr. House. You as jurors will have to look at the evidence and make this determination. Now, if Mr. Thompson proves to you by a preponderance of the evidence these three items, if he proves to you that there was a contract between him and the lessee and that the defect was in the leased premises and that the agreement between him and the lessee places responsibility for the defect on him, Mr. House, then you should return a verdict in favor of Mr. Thompson. However, if he does not convince you of those things, or if you're convinced that Mr. Thompson knew or should have known of the defect and has received notice, written or oral, of it and failed to repair it within a reasonable time, then this defense is no good. So, to repeat that, if there is such a contract and if there is a showing that there is a defect in the rented premises, and if the contract provides that the lessee will assume responsibility of the defect, then Mr. Thompson has no liability unless it is shown that he knew or should have known of that defect or had received notice of it and failed to repair it within a reasonable time."
When he reached interrogatory number 5 he commented to the jury:
"This is the R.S. 9:3221 I told you about. Remember when I told you about that, I told you that did not apply if the person knew of the defect or should have known of the defect or had notice of it and didn't repair it within a reasonable time."
That was the extent of his explanation of interrogatory number 5.
When the jury returned its verdict, the trial court polled the jury members on their answers to each interrogatory. He indicated to the jury that by having answered "yes" to interrogatory number 5, their answers to numbers 6 and 7 were unnecessary. Several jurors immediately informed him that such result was not their intention. The court explained that when he gave his initial instruction on interrogatory number 5, he indicated that an answer of "yes" meant two things: (1) that the jury found plaintiff had contractually assumed responsibility for injuries caused by defects in the leased premises and (2) that the jury found that defendant did not know or should have known of the defect nor did he receive notice of it and fail to repair it within a reasonable time. The jury informed him that they had not understood the question in that way. The trial court then resubmitted the interrogatories to the jury for further deliberation. The jury returned with an answer of "no" to interrogatory number 5, with the other answers unchanged.
It is clear that the interrogatories given to the jury were confusing and incomplete. The interrogatory in its explicit words made no reference to the knowledge of Mr. Thompson. This confusion could have been removed by another interrogatory as to whether the defendant knew or should have known of the defect causing injury or had received notice of it and failed to repair it within a reasonable time.
Defendant argues that LSA-C. C.P. art. 1811 (prior to its amendment in 1983) dealing with special verdicts, applies in these circumstances; art. 1811 does not provide for resubmission of interrogatories to the jury for reconsideration of inconsistent answers. We believe that LSA-C.C.P. *1200 art. 1812[5] applies. The seventh interrogatory was tantamount to a general verdict in favor of plaintiffs. Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1st Cir.1977). Under LSA-C.C.P. art. 1812, the trial court could do one of three things: (1) direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, (2) order a new trial or (3) return the jury for further consideration of its answers and verdict. Which option to exercise is a matter within the discretion of the court. We find no abuse of discretion in this instance.
Plaintiffs acknowledged that the lease Mr. House signed included a clause absolving the defendant of any responsibility for injuries caused by defects in the leased premises. Absent the court's instruction, the jury's initial answer to the literal terms of interrogatory number 5 was correct. However, under the instructions given the second answer included a consideration of R.S. 9:3221, and was correct under the evidence. We find no error.
Defendant contends in his final assignments of error that the jury's answers finding the elements of liability under C.C. art. 2322 and the absence of victim fault were erroneous.
Article 2322 imposes liability upon the owner of a building to persons injured through its "ruin" whether due to a vice in its original construction or through his or her neglect to repair it. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981). Jurisprudence has included within the term "building" any "necessary appurtenances to structures and movables made immovable by attachment." Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979); Harris v. Gulf States Utilities Co., 391 So.2d 1270 (La.App. 1st Cir.1980), writ denied 396 So.2d 920 (La.1981). See also, Sumner v. Foremost Insurance Co., 417 So.2d 1327 (La.App. 3d Cir.1982); Boudoin v. Schwegmann Brothers Giant Supermarket, 371 So.2d 370 (La.App. 4th Cir.1979); Crawford v. Wheless, 265 So.2d 661 (La.App. 2d Cir. 1972). The central cooling unit in the attic of the home owned by defendant is an "appurtenance" within the terms of the jurisprudence.
The evidence supports the jury's conclusion that the cooling unit was defective, in that (1) its evaporator coil was malfunctioning, resulting in the unit being difficult to operate except for brief periods of time, and (2) whatever the cause, the unit was leaking water.
Plaintiff must prove that the defective cooling unit was a cause-in-fact of her injury, a substantial factor in bringing about her injury. Dixie Drive-it Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La.1962). The jury found that plaintiff's injury was caused by the defect and we cannot say that his decision was manifestly erroneous.
An owner may be exculpated from liability under Article 2322 for a premises defect if he proves "victim fault". Loescher v. Parr, 324 So.2d 441 (La.1975); Dorry v. LaFleur, 399 So.2d 559 (La.1981). In reference to this defense, the trial judge's instruction to the jury seems to equate "victim fault" with assumption of *1201 the risk.[6] The jury found that the plaintiff had not voluntarily assumed a known risk of injury. The jury obviously believed that plaintiff did not know of the danger involved or did not fully appreciate the risk of injury from water on the stairs. The jury's conclusion that plaintiff did not voluntarily assume the risk of injury is not clearly wrong.
Alternatively, defendant argues that plaintiff was contributorily negligent. Our review of the evidence supports a conclusion that plaintiff acted reasonably and prudently under the circumstances, and exercised due care to avoid injury. Plaintiff was not contributorily negligent.[7]
Defendant contends as well that the jury erred in not exculpating him from liability under LSA-R.S. 9:3221. There is ample evidence to support a conclusion that defendant received notice of the defect but failed to repair it within a reasonable time. Plaintiff first notified defendant through his wife on April 5th. Two days later a repairman arrived but departed without fixing the unit, telling plaintiff that he would have to get specific authorization from the defendant. The repairman's employer testified that his office contacted defendant that day to request authorization but defendant declined to engage their services. Defendant stated he was not informed until several days later that the unit had not been repaired. There was also a dispute over when plaintiff informed defendant of water leaking and whether defendant was ever told that water was leaking onto the stairs. Defendant admitted he knew of leaking water on the 13th. The unit was not finally repaired until the 21st or 22nd, and expert testimony indicated the repair could have been accomplished within several hours.
For the above reasons, the judgment of the trial court is affirmed. All costs are to be paid by defendant.
AFFIRMED.
NOTES
[1] Art. 2315 provides in pertinent part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Art. 2317 provides in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
Art. 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
Art. 2695 provides:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
[2] Only Joe Thompson ever answered plaintiffs' suit; testimony at trial established that Thompson's insurance did not include coverage for plaintiff's injury.
[3] The trial court instructed the jury on the elements of liability and defenses available under C.C. art. 2322, reserving instruction on C.C. art. 2315 unless and until the jury returned with a verdict for defendant under C.C. art. 2322.
[4] LSA-R.S. 9:3221 provides:

The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
[5] LSA-C.C.P. Art. 1812 (prior to 1983 amendment) provided, in pertinent part:

"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict....
. . . . .
When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial.
When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial."
[6] The defense of assumption of risk presupposes that (1) the plaintiff had some knowledge of the danger; (2) she understood and appreciated the risk therefrom and (3) she voluntarily exposed herself to such risk. Dorry v. LaFleur, supra, p. 562.
[7] Even had we found plaintiff contributorily negligent, that fault would not necessarily bar her recovery. Under what circumstances a plaintiff's contributory negligence should bar recovery in a strict liability case must be determined on a case by case basis. Dorry v. LaFleur, supra.