598 So.2d 1107 (1992)
HARTFORD ACCIDENT & INDEMNITY COMPANY
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
Jessie Mae KESSLING, et al.
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
Nos. 91-CA-1327, 91-CA-1328.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1992.
Rehearing Denied June 17, 1992.
Stephen R. Doddy, Robert R. Peebles, Jr., Sessions & Fishman, New Orleans, for Jessie Mae Kessling, wife of/and Philip F. Kessling, Jr.
David S. Kelly, Lemle & Kelleher, New Orleans, for Illinois Cent. R. Co.
Thomas L. Gaudry, Jr., Michael L. Martin, Windhorst, Gaudry, Talley & Ranson, Harvey, for INCA Metal Products Corp.
Ray S. Clement, Jr., Berrigan, Danielson, Litchfield, Olsen, Schonekas & Mann, New Orleans, for Bayou Steel Corp.
Before WARD and ARMSTRONG, JJ., and EASON, J. Pro Tem.
WARD, Judge.
This is an appeal from summary judgments rendered in favor of multiple defendants in two consolidated cases. In one case Mr. and Mrs. Philip Kessling sued for damages for personal injuries; and in the second, Hartford Accident & Indemnity Company sued for reimbursement of worker's *1108 compensation benefits paid to Philip Kessling. Mr. and Mrs. Kessling seek damages from the Illinois Central Railroad and prior users of the railroad car that Philip Kessling was working in, preparing the car for loading. The trial court rendered summary judgment in favor of the defendants, and Mr. and Mrs. Kessling and Hartford appeal.
We affirm, because we find that the defendants did not owe a duty in tort to Mr. and Mrs. Kessling, and Hartford is not entitled to reimbursement for worker's compensation paid to them. Even if one or more of the defendant's conduct was the cause in fact of the injuries, defendants are not liable unless they owed a duty to protect Mr. Kessling from the type of injury he sustained and in the manner he sustained it. Whether a duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Questions of law are for the trial court to decide in the first instance, and for appellate courts on review. "Terms such as `duty' are merely verbal expressions of policy decisions and do not explain them." Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1155 (La.1988).
The trial court's decision does not clearly state the reasons for summary judgment. The court merely said that there is no genuine issue of fact and therefore as a matter of law the defendants were entitled to summary judgment. Because the defendants concentrated and directed most of their argument to the question of whether there defendants owed a duty to Philip Kessling, we assume that the trial court found that the defendants did not owe a duty to Kessling to protect him. Under the following facts the trial court determined that the defendants did not owe a duty to Kessling to protect him from the type of harm he suffered in the manner in which he sustained it.
We agree, and base our decision on the following uncontested facts. Kessling was employed as a longshoreman by New Orleans Marine Contractors (NOMC), a stevedore company who contracted to unload a Lykes Brothers vessel. On May 8, 1987 NOMC ordered a covered gondola car from the New Orleans Public Belt Railroad to transfer steel pipe from the vessel to a railroad car. The Public Belt did not have that type car, but it obtained one from Illinois Central Railroad Company. The Illinois Central offered New Orleans Marine either a class "A" or "B" gondola; "A" meaning "broom clean", "B" meaning "as is". New Orleans Marine wanted a class "B" car. IC moved the car from its storage facility in Mississippi and delivered it to the designated area, the New Orleans intercostal waterway. The gondola car is a specially equipped car with three very large and heavy steel covers which can not be removed or lifted without the use of a crane. On May 13, 1987 after Kessling and a fellow employee removed the covers on the car they saw that the interior of the car was strewn with banding straps, pieces of wood and other debris. The car was so dirty that Kessling and his coemployee were undecided about using the car. After speaking with their supervisor who was also employed by NOMC, they decided to use the car. They began to prepare it for loading by repositioning several wooden 4 X 4's and placing scrap plywood and used dunnage on top of the banding straps and debris. While preparing the car, Kessling fell and was injured, either because he became entangled in banding straps or for some other reason.
The rail car was last used in 1986 when it was leased from Illinois Central for a shipment of steel pipe from Bayou Steel Corporation in Louisiana to Inca Metal Products, Inc. of Texas. After Inca unloaded the car, Illinois Central returned it to storage in Mississippi where it remained until Illinois Central leased it to NOMC, Kessling's employer.
Kessling sued the Illinois Central, the New Orleans Public Belt and its owner, the City of New Orleans, and Inca Metal Products. These defendants filed petitions for cross-claims, and Inca Metal Products sued Bayou Steel in a third party demand. The trial court first granted summary judgment in favor of the Public Belt, and the Kesslings dismissed their suit against the City *1109 of New Orleans. The trial court next rendered summary judgment in favor of the remaining defendants. This appeal in concerned only with the summary judgments later entered by the trial court in favor of Illinois Central, Inca Metal Products, and Bayou Steel.
Kessling argues the trial court erred by granting summary judgment because there are material facts in dispute, and also because the trial court erroneously relied upon the "obvious dangerno duty rule" rather than applying the duty/risk analysis.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University et al, 591 So.2d 342 (La.1991). The determination of a legal duty which obliges the defendant to protect the plaintiff from the risk presented is a legal question for the court to determine. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984). The particular facts and circumstances of each individual case determines the extent of the duty and the resulting degree of care necessary to fulfill the duty. Kent v. Gulf States Utilities, 418 So.2d 493, 497 (La.1982).
Although in their petition Mr. and Mrs. Kessling allege both strict liability and negligence as theories of recovery, in argument Kessling has abandoned strict liability and now relies solely on negligence allegations. The question of cause-in-fact is not an issue; the critical issue is whether the defendants owed a duty to Kessling as a matter of law. If they do not, then neither the trial court nor this court need consider whether they breached their duty and whether there is a genuine issue of fact that they did so.
Using duty/risks analysis and the approved terminology, we will first consider whether Philip Kessling has articulated an interest that should be protected. Of course he has. That interest is to be free from personal injury. And he has also generally articulated a rule to protect those intereststhe defendants should act reasonably and not create an unreasonable risk of harm to him or others. However, in considering other factors to determine whether a duty exists, the ease of association is determinative in this case. Little if any different from the "foreseeability" of a reasonable man, it is obvious that when Bayou Steel leased the Illinois Central railroad car to deliver steel to Inca Metal Products there was very little "ease of association" between the delivery of steel to Inca in Texas with the personal injury of a longshoreman in New Orleans, injured because of debris left in the car. Bayou Steel could hardly foresee that after shipment when the car was unloaded there would be debris remaining in the car for more than six months until it was delivered to NOMC in New Orleans or that Kessling would be injured because of its shipment of steel.
As to Inca, assuming its employees left the car in a dirty condition, there is also very little ease of association between that conduct and Kessling's injury. It is not easy to foresee that more than six months after its employees unloaded the steel in Texas that a longshoreman in New Orleans would stumble over debris left in the car and injure himself. If Inca has a duty then it is more contractual than delictual; if a duty exists to return the car in a clean condition, it runs in favor of Illinois Central.
Illinois Central's duty is likewise more contractual than delictual. That is if it has a duty to lease a clean railroad car then that duty runs in favor of the lessee, Kessling's employee, NOMC. However, as a matter of practice in the industry a railroad leases railroad cars such as this in either a broom clean class "A" condition, or "as is". If the lessee contracts for a car less than this, a class "B" car, then the lessee assumes the responsibility for that condition. The cost entailed in examining every rail car in service for extraneous matter left in it after use would place an extraordinary burden upon a railroad. Moreover, even if this factor, an economic one, is not determinative, then there is also the question of ease of association, and as *1110 with Bayou Steel and Inca, there is very little. This type of injury occurring in this manner is just not very foreseeable, if at all.
Finally, because it is an unquestioned fact that Kessling knew of the condition of the railroad car that he undertook to prepare for loading, this too may be considered in determining the existence of a duty:
... that a potentially dangerous condition that should be obvious to all comers is not, in all circumstances, unreasonably dangerous.... Therefore, under duty/risk analysis, if the facts of a particular case warrant, there could be a finding that defendant owed no duty under the circumstances.... Murray [v. Ramada Inns, Inc.] 521 So.2d [1123] at 1136 (citing Shelton v. Aetna Casualty & Sur. Co., 334 So.2d 406, 410 (La.1976).
In his deposition Kessling stated that in order to load the rail car with the pipe from the Lykes ship it was necessary for him to enter the car and arrange wood dunnage or blocking on the floor of the car, so that the pipe could be placed on it. This would allow slide straps or cables under and around the pipe to lift it into or out of the car, using cranes. Kessling saw the debris in the car before he entered it. Instead of removing the debris, Kessling began setting up blocking for the load of pipe, arranging the plywood on the floor of the car to set up a "deck" upon which he and his co-workers could then arrange the 4×4 blocking for the pipe to be loaded. Kessling was carrying a piece of plywood when he fell.
Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), indicates that these facts alone may determine that there was no duty.
In summary, we agree with the trial court's holding that none of the defendants owed a duty to Philip Kessling. The duty owed to hima duty to provide a safe work placewas a duty owned by his employer, NOMC, but it is immunized by reason of the worker's compensation laws of Louisiana. Because we affirm the holding that the defendants did not owe a duty, we do not consider whether there is a genuine issue of fact as to a breach of duty by any defendant. For these reasons, we affirm.
AFFIRMED.
EASON, Judge, dissents with written reasons.
I respectfully dissent.
The countervailing affidavit indicates that the car was extremely "dirty". I am of the opinion that the prior lessee had a duty either ex contractu or ex delicto to clean the car. It is of no moment how long ago they failed in this duty. It is foreseeable that someone would be injured as a result of this breach of duty. The issue as to assumption of risk is no bar in these proceedings, but is a facet of comparative negligence. I would remand for a trial on the merits.