643 So.2d 797 (1994)
Moses WIGGINS, Sr., on Behalf of his deceased son, Thaddeus WIGGINS
v.
Bryan LEDET and New Orleans Public Service, Inc.
No. 94-CA-0485.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
*799 Bach & Wasserman, Gerald Wasserman, Metairie, for plaintiff/appellant.
Bailey, Rossi & Kincade, B. Ralph Bailey, Frederick H.N. Dwyer, Metairie, for defendants/appellees.
Before BARRY, LOBRANO and WARD, JJ.
BARRY, Judge.
Plaintiff's son was fatally electrocuted on a "strip" shopping center owned by Bryan Ledet. A summary judgment was granted in favor of Ledet and his insurer Scottsdale Insurance Company. We affirm.

FACTS
The petition of Moses Wiggins, Sr. alleges that his son Thaddeus Wiggins was electrocuted by a live wire from a major transformer in an abandoned building owned by Ledet. The petition alleges that the transformer unit was owned and under the control of New Orleans Public Service, Inc. (NOPSI) and that Wiggins entered the building through a deteriorated opening on the property.
Plaintiff alleges that Ledet is liable under strict liability for damages caused by the ruin and dangerous condition of the building, and negligence for allowing a dangerous condition to exist on the abandoned premises.
In its answer NOPSI "denied as written" that the transformer unit "was and remains owned by and under the control of" NOPSI.
Ledet filed a general denial and a cross claim against NOPSI alleging that the vault in which the transformer is located contained equipment owned by NOPSI, the vault was in the exclusive control of NOPSI, and NOPSI had sole access to the vault. NOPSI admitted in its answer to Ledet's cross claim that it owned the vault's equipment and it had exclusive possession, control and access to the vault.
NOPSI filed a cross claim against Ledet which alleged that he failed to properly secure the ruinous building and he allowed entry near the rear door of NOPSI's vault.
Ledet and NOPSI moved for summary judgment. Attached to Ledet's motion are: 1) a vault agreement between NOPSI and the previous property owner, Time Saver Stores; 2) pictures of the vault; 3) copies of portions of depositions (complete depositions are not in the record) of Joseph Gavin and Guy Wilson, employees of NOPSI and Louisiana Power & Light; and 4) Wiggins' response to Ledet's request for admissions.
The vault agreement executed by Time Saver and NOPSI provides that the vault was the property of and maintained by the owner, and the transformer and other facilities within the vault were owned, maintained and operated by NOPSI. Under the agreement NOPSI had exclusive use and occupancy of the vault and the right of ingress and egress to the vault for the purpose of maintaining the transformer. Ledet was not a party to that agreement.
The photos in evidence show that the vault comprises a back corner of the building. It is self-contained and appears accessible from outside and inside the building. Each vault door is clearly marked "DANGERHIGH VOLTAGE" and contains a padlock. One photo shows what appears to be an opening in the side of the building that is partially covered with wooden slats. The opening is near the vault but does not appear to give access to the vault.
Wiggins' admissions reiterate that under the vault agreement between Time Saver and NOPSI, NOPSI owned the equipment in the vault and had exclusive use, occupancy and right of ingress and egress to the vault.
The deposition of Joseph Gavin, Manager of Substation Maintenance and Communications for the metropolitan region of LP & L, states that the equipment in the vault provided electricity to the area near Ledet's building. The vault remained locked and at the time of the accident only NOPSI had access and knew whether the electrical loop within the vault was energized.
The deposition of Guy Wilson, senior line mechanic for LP & L and NOPSI, states that he saw the decedent on the premises about three to four weeks prior to the accident and the decedent appeared to do something to an electrical meter loop outside the building. The decedent fled and Wilson surveyed the *800 area to ensure its security and noted that the vault doors were locked and the wooden fence near the vault was intact.
The trial court granted summary judgment in favor of Ledet and denied summary judgment to NOPSI. The trial judge stated in reasons for judgment that Ledet "did not have any control, custody or care for the vault area where the decedent was electrocuted. Rather, this area was under the care, custody and control of New Orleans Public Service." Plaintiff appeals.

SUMMARY JUDGMENT
Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La. 1991). When the motion is supported by the record, the adverse party may not rest on the mere allegations or denials of his pleading and his response must set forth specific facts showing a genuine issue for trial. LSA-C.C.P. art. 967.
The failure of the party to file counter affidavits opposed to summary judgment does not automatically entitle the mover to judgment. Koenig v. New Orleans Public Service, Inc., 619 So.2d 1127, 1130 (La.App. 4th Cir.1993), citing Berry v. Brown & Root, Inc., 595 So.2d 767, 770 (La.App. 4th Cir. 1992); Roberts v. Louisiana Coca-Cola Bottling Co., 566 So.2d 163, 166 (La.App. 4th Cir.), writ den. 571 So.2d 647 (La.1990). The moving party has the burden to affirmatively and clearly prove the absence of a genuine issue for trial. Any doubt must be resolved against summary judgment and in favor of trial on the merits. Koenig v. New Orleans Public Service, Inc., 619 So.2d at 1130.

THEORY OF RECOVERY
Negligence, not strict liability, is applicable to an electrocution that involves an uninsulated, overhead power line. Dixon v. Northeast Louisiana Power Cooperative, Inc., 524 So.2d 35 (La.App. 2d Cir.), writ den. 526 So.2d 809 (La.1988); Frazee v. Gulf States Utilities Co., 498 So.2d 47 (La.App. 1st Cir.1986), writ den. 501 So.2d 215 (La. 1987). However, jurisprudence suggests that strict liability is applicable against a landowner when a person is injured by a transformer in a building. See Harris v. Gulf States Utilities Co., 391 So.2d 1270 (La. App. 1st Cir.1980), writ den. 396 So.2d 920 (La.1981).
In Harris the plaintiff touched a transformer box on abandoned property. The Court held that the landowner was not strictly liable under LSA-C.C. art. 2317 because the transformer box was "owned and maintained by GSU [and] was not sufficiently in the custody or control of (the landowner)." Further, the landowner was not strictly liable for ruin of a building under LSA-C.C. art. 2322 because "the duty of care imposed by Article 2322 should not be extended to include liability for the `ruin' of a pad-mounted transformer box never connected to the main structure in any fashion." Id. at 1273. Harris suggests that strict liability principles apply to a landowner when a person is injured by a ground level transformer that is in the custody and control of the landowner or is connected to a building. Therefore, we will consider both negligence and strict liability.

FAILURE TO MAINTAIN PROPERTY
Plaintiff argues that a factual question exists as to whether Ledet failed to properly maintain his property which caused decedent's death.

Negligence
To prevail in negligence, the plaintiff must show 1) the defendant's conduct was a cause in fact of the accident; 2) the defendant owed a duty to conform his conduct to a specific standard; 3) defendant breached that duty; 4) whether the duty encompasses the risk encountered by the injured person; and 5) damages. Wilson v. Department of Public Safety & Corrections, 576 So.2d 490, 493 (La.1991).
The duty owed by a defendant to protect against injury is a question of law and is decided by the trial court in the first *801 instance and the appellate court on review. Hartford Accident & Indemnity v. Illinois Central Gulf Railroad Co., 598 So.2d 1107, 1108 (La.App. 4th Cir.), writ den. 605 So.2d 1148 (La.1992). The trial court in this case did not address the duty.
The owner of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition or warn potential victims of its existence. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370, 1374 (La.App. 2d Cir.1992). The plaintiff must prove the owner knew or should have known of the risk. Id. at 1375. The property owner is not the insurer of the premises, but must act reasonably in view of the probability of injury. Id. at 1375.
When considering the duty owed by a landowner, the status of the injured person as an invitee or trespasser is relevant but not determinative. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367, 371 (La. 1976), cert. den., 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Melerine v. State, 505 So.2d 79 (La.App. 4th Cir.), writ den. 507 So.2d 226 (La.1987).
Cates was a pre-comparative fault case in which plaintiff was electrocuted when he accessed the defendant landowner's property and climbed an electrical pole. The Supreme Court held that the plaintiff was barred from recovery as a matter of law because of his contributory fault but stated that the owner of property on which the utility pole was located "owed plaintiff the duty of ordinary care under the circumstances." Id. at 371. The Court declined to define the precise duty owed by the landowner since it was unnecessary to the holding. Id.
Melerine was not an electrocution case but held that
In determining a land owner's liability in negligence cases ..., the court must ascertain whether the land owner breached a legal duty imposed to protect against the particular risk involved. The plaintiff's status as a trespasser may have some bearing on the question of liability but is not determinative. Rather the proper test is whether the land owner acted as a reasonable man in view of the probability of injury to others in the management of his property.
Melerine, 505 So.2d at 80.
Joseph Gavin testified by deposition that pictures of the vault showed some equipment inside that was not installed by NOPSI. However, he stated that NOPSI had exclusive access to the vault, and NOPSI's answer to Ledet's cross claim admits NOPSI had exclusive possession and control of the cubicle.
Guy Wilson testified by deposition that the decedent apparently entered the vault through its north door, then crawled under a partition two feet from the ground and was electrocuted by a switch when he stood up on the opposite side of that partition. (The plaintiff maintains in his brief that decedent was electrocuted by a wire on the floor of the vault rather than a switch but offers no proof of that assertion.) Wilson testified that the north door, which contained a clear warning, was equipped with a padlock. Wilson said he visited the site before the decedent's body was removed and noted that the lock on that door was intact but the hasp was broken. He did not see any tools near the decedent's body but there was debris near the door which could have been used to break the hasp. The entrance to the area outside of the vault's north door was partially covered with wooden slats and allowed access to the building.
It is unknown whether the north door was securely closed just before decedent's accident. However, Wilson testified that the door was locked and the wooden fence was intact three to four weeks prior to the incident.
Ledet had a duty to act as a reasonable person in the management of his property in view of the probability of injury to others. That does not include the duty to keep the vault in a safe condition where Gavin's uncontradicted deposition testimony shows that NOPSI had exclusive access to that vault and NOPSI's answer to Ledet's cross claim admits that the cubicle was in NOPSI's exclusive possession and control. Ledet was not a party to the vault agreement between Time *802 Saver and NOPSI which required Time Saver to maintain the vault, and that agreement is irrelevant. Further, Gavin testified in his deposition that he is unaware of any vault agreement between NOPSI and Ledet.
Plaintiff argues that Ledet breached his duty to maintain the wooden fence entrance to the area surrounding the vault and that breach caused decedent's death. Assuming Ledet breached a duty to maintain that fence, under the uncontested facts that duty does not encompass the risk encountered when a person accesses the property through the fence, walks through a marked door into an electrical vault that is under the exclusive possession and control of another party, crawls under a partition two feet from the ground and is electrocuted on the other side of the partition. There is no issue of material fact and Ledet is not liable under negligence as a matter of law.

Strict Liability
To recover in strict liability under Civil Code Articles 2317 or 2322 against the owner of a building, the injured party must prove that the building or its appurtenances posed an unreasonable risk of injury to others and that the damage occurred through that risk. Entrevia v. Hood, 427 So.2d 1146, 1148 (La.1983). The defendant must have custody or care of the thing. Id. at 1148, quoting Loescher v. Parr, 324 So.2d 441, 446-47 (La.1975).
The trial court held that Ledet was not liable because he did not have custody and control of the vault area. Plaintiff argues that Ledet neglected to repair the wooden slats on the side of the building which allowed the decedent to access the building. Plaintiff also argues that the presence of equipment in the vault that was not installed by NOPSI creates an issue of fact concerning who had control of the vault.
Gavin's uncontested deposition establishes that NOPSI had exclusive access to the vault and NOPSI's answer to Ledet's cross claim admits that it had exclusive possession and control of the vault. The trial court did not err by granting summary judgment on strict liability.
The judgment is affirmed.
AFFIRMED.