| GREMILLION, Judge.
This is an appeal by the plaintiffs, Harry Thomas and his wife, Annie Thomas, individually and on behalf of their children, Keeshe, Tameka, and Lashawn Trahan, and Crystal and Joshua Lee Thomas, from a jury verdict in favor of the defendants, Medical Center of Southwest Louisiana and Dover Elevator Company. We affirm.
FACTS
On September 18, 1991, Harry and Annie allege they were injured when the elevator they were riding in at the Medical Center *708 began to shake and vibrate. Annie’s mother was a patient at the hospital and they were on their way up to her fifth floor room when they entered the elevator. Harry pushed the button for the fifth floor, and, as soon as the elevator started to ascend, they claim it started shaking and vibrating. According to Annie, she fell to her knees screaming and placed her hands Rover her head to protect it from something falling from the ceiling. Harry claims he kept pushing buttons on the control panel, trying to stop the elevator. He was thrown from side to side by the shaking of the elevator and then placed himself on top of Annie in an attempt to protect her. When the elevator reached the fifth floor, its doors opened and Harry, holding them open, yelled for help. A nurse sitting at a desk came over and turned on an alarm.
As a result of this incident, both Harry and Annie claimed to have suffered injuries. Annie complained of pain in her neck, back, right shoulder, left wrist, and both knees. Harry complained of neck, back, and right shoulder pain. He also alleges he suffered a relapse of a preexisting mental condition, paranoid schizophrenia, which had been in remission. As a result of this relapse, Harry was hospitalized twice.
Harry and Annie filed suit on September 17, 1992, alleging that the Medical Center and Dover were liable jointly and in solido to them under both negligence and strict liability theories of recovery for injuries and mental anguish they suffered because of the incident. They further alleged that their children suffered a loss of consortium, services, society, and companionship due to their parents’ injuries, for which the Medical Center and Dover are both responsible.
A three day jury trial began on July 19, 1995, after which the jury returned a verdict in favor of the Medical Center and Dover. The jury held that Harry and Annie failed to prove by a preponderance of the evidence that either the Medical Center or Dover were negligent or at fault in causing the accident, or that the elevator was defective. As a result of this verdict, Harry and Annie filed a Motion for a Judgment Notwithstanding the Verdict or, in the alternative, for a New Trial. They alleged that in addition to verdicts under the theories of negligence and strict liability, Ra verdict should have been rendered in their favor under the doctrine of res ipsa loquitur, even though it was not argued during the jury trial. Both of these motions were denied by the trial court and this appeal followed.
ISSUES
On appeal, the Thomases allege four assignments of error. They allege that the jury was manifestly erroneous in finding for the defendants; that they proved a cause of action for strict liability and, thus, the jury was manifestly erroneous in rendering its verdict and trial court for allowing it to stand; that the trial court committed manifest error by not applying the doctrine of res ipsa loquitur to the facts of this case; and that this court should award reasonable damages after reviewing the facts.
LAW
A reviewing court may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless the finding is clearly wrong. StobaH v. State, Through DOTD, 617 So.2d 880 (La.1993). “The issue ... is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Id. at 882. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. This is true, even if the reviewing court feels that its own evaluations and inferences are as reasonable as those by the finder of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989).
When [a jury’s] findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Id. at 844. (citations omitted)
| JURY VERDICT
In their first assignment of error, the Thomases allege that the jury committed *709 manifest error in rendering its verdict because the defendants presented no evidence contrary to their position and reasonable minds could not differ on the fact that an accident occurred from which they received injuries. They argue that their testimony was uncontradicted and that “all testimony revealed that the hospital found the elevator in a state of disrepair.” The Thomases base their argument on the fact that their testimony was the only evidence concerning the accident introduced into the record.
Notwithstanding the fact that neither the Medical Center nor Dover introduced any witnesses who testified as to the occurrence of the incident, the jury heard testimony which did contradict the Thomases’ testimony. This-testimony came from the contradictions and confusion in the Thomases’ own testimony and from the expert witness, Thomas Moskal.
Annie testified that the elevator started shaking and things started falling as soon as the elevator started ascending. She started screaming and put her hands over her head; something hit her on the head and she fell to the floor of the elevator. When the elevator finally stopped at the fifth floor, she testified that she saw something hanging down from the ceiling and something on the floor of the car. When questioned by counsel for the Medical Center, Annie stated that when she first entered the elevator, she was standing-in the back right side of the elevator. However, in her deposition she had testified that she first stood in the back left hand side of the elevator and then moved up towards the front of the ear. After her memory was refreshed, Annie testified that she started off in the left hand side of the elevator, but when it stopped she was more towards the right of the car.
15When questioned by the Medical Center about the movements of the elevator, Annie testified that she did not know whether the elevator shook from side to side or up and down. When referred to her deposition, in which she stated that the elevator shook from side to side, Annie testified that her testimony in her deposition was right. Counsel for the Medical Center next questioned Amie about how she reached the floor of the elevator. She stated that she was unsure whether she fell down or went down onto her knees. In her deposition, she stated that she thought she kneeled down on the floor, instead of being knocked down.
Annie was next questioned by Dover. When asked if she’ was able to walk out of the elevator after it reached the fifth floor, Annie could not remember if she did. She further testified that when she exited the elevator there were things on the floor, however, she was unable to remember their size, shape, or color. She simply stated that something from the ceiling hit her and that she remembered feeling Harry on top of her.
Harry testified that aftér he pushed the button for the fifth floor, the elevator began shaking and vibrating, throwing him from side to side. He stated that he tried pushing buttons on the control panel in an attempt to stop the elevator. He then tried protecting his wife by throwing himself over her. When the elevator reached the fifth floor, he grabbed the doors to prevent them from closing after they opened and called for help. Harry could not remember whether anything fell from the ceiling onto the floor of the elevator. On cross examination by the Medical Center, Harry testified that he was hit all over, but he could not say what hit him.
Moskal, an elevator/escalator consultant, was called as an expert by the Thomases. His understanding of the incident was that the Thomases entered the elevator and, upon it ascending to the fifth floor, the elevator began vibrating, |6shaking, and jerking; and that the ceiling appeared to fall and various objects fell causing them injuries. In preparing for the trial, Moskal stated that he reviewed various depositions and repair orders and that he inspected the elevator in question. He described the elevator as a Dover traction overhead geared machine, hospital-type elevator with a capacity of 3,000 pounds, which travels at 350 feet per minute or four miles per hour. Moskal stated that the ceiling of the elevator, which is five feet wide by eight feet long, was composed of four defuser panels and the angles holding them up. The metal part holding the ceiling up is composed of four long pieces with an angle between each one and a border angle around *710 them. The ceiling is attached to the elevator car at six different points by brackets, which are attached to the wall of the car by two screws. The defuser panels fit into the metal frame which has a one-half inch lip on the inside and the panels are dropped into the four slots and held down by gravity.
Moskal stated that he read the deposition of Steve Sonnier, the direct or of physical operations at the Medical Center, who indicated that when he reached the elevator after the incident, he found that the ceiling frame was out of one of the brackets, but the ceiling bolt was still attached to the frame of the ceiling. Moskal stated that if the elevator was operated normally, it would take a severe, almost catastrophic, activity to pull the bolt out of the bracket. It was his opinion that this particular bolt was not in its proper position in the bracket when the Thomases entered the elevator. He further stated that when an elevator is used in the normal anticipated manner, it would not shake or vibrate excessively, nor would the ceiling become dislodged and either fall or partially fall. Finally, Moskal testified that the condition which caused this ceiling to fall was an, unreasonably dangerous condition and that the Medical Center was negligent in causing this accident.
^During cross-examination, Moskal testified that the metal frame holding the defuser panels is located seven feet four inches off the floor. When the ceiling frame fell, it only fell between six and eight inches. Thus, the ceiling was still at least six feet eight inches above the elevator floor. Moskal further testified that when he read the depositions of the Thomases, he could not specifically detect from their testimony that they were actually hit by the ceiling frame. He stated that the defuser panels are used to defuse light and act as a barrier between the lights and the passengers in the car. Moskal stated that he had no knowledge of anything falling to the floor of the elevator. There was no record that glass from a light bulb was cleaned up from the floor of the car following the incident.
On direct examination, Moskal testified that there were several safety devices located on the elevator, one being the emergency stop button located inside the elevator. Another device automatically shuts down the elevator if it travels past the bottom landing or above the top landing by a certain distance. A centrifugal device will automatically shut down the elevator if it speeds by a certain percentage rate over its normal rated speed. Moskal stated that there was no evidence that any of these safety features were triggered as a result of the accident in question. He further stated that two of the most common things that would cause the elevator to move horizontally would be a bearing going bad on the rubber roller guide, of which the elevator had three, or if a foreign object either cut a chunk out of the rubber tire or became caught, producing either a noise or causing the roller to drag.
Moskal testified during cross-examination that he had no knowledge that any of these things occurred on September 18, 1991. He stated that the most the roller guide could move if anything happened would be between one-half to one inch. When the roller guides work properly, the most they can move horizontally isjgbetween one-eighth and one-sixteenth inch. With regards to the ceiling brackets, Moskal stated that if the bolts were properly in the brackets, it would take a force from below to push the ceiling grid out of the bracket. When questioned by counsel for Dover, Moskal testified that it was extremely unlikely that the elevator shook from side to side as the Thomases testified.
In addition to this testimony, the jury heard testimony from Dr. James Blackburn concerning Harry’s mental condition. Dr, Blackburn defined paranoid schizophrenia as a cluster of symptoms caused by a change in the chemistry of the brain that affects an individual’s ability to perceive various aspects of the world around him, and sometimes causes hallucinations or delusions. He stated that medicine may be helpful in treating and managing this disease, however, it is not cured by medication. With reasonable medication, most people are able to function at some level.
Dr. Blackburn testified that he saw Harry regularly about four times a year before this incident occurred. He stated that Harry was having increased complaints of paranoia and *711 that he increased the amount of Harry’s medication, Stelazine, on July 24, 1991. Harry suffers from hallucinations as a result of this condition, including believing that people are following him and that his yard is full of snakes. When questioned about whether the incident in the elevator was a hallucination, Dr. Blackburn stated that it was possible, but only in the restricted sense that nothing is impossible. He also testified that if Harry imagined the incident, then Annie would have also had to imagine it, which was very unlikely. It was Dr. Blackburn’s opinion that this was not a hallucination. He stated that it was very unusual for Harry’s hallucinations to be as specific as the ceiling tile falling down on him.
IsAfter reviewing the record in its entirety, we conclude that the finding by the jury, that neither the Medical Center nor Dover was negligent in causing the accident, was reasonable in light of the evidence adduced at the hearing. Although the defendants did not present any witnesses to contradict the testimony given by the Thomases, their testimony itself was contradictory; and the jury was in the best position to evaluate the demeanor and nuances of that testimony. Neither was able to say with certainty how the elevator shook, and although they each testified that they were hit by something during the incident, neither could recall what hit them or seeing anything on the floor of the elevator as they left it.
Even the Thomases’ expert contradicted their testimony by stating that it would be impossible for the elevator to shake and vibrate as they described. Although Moskal testified that the normal operation of the elevator would not have caused the ceiling-frame to fall, he also opined that the ceiling bolt was not in its bracket properly when the Thomases entered the elevator. Even though the ceiling frame fell, it was reasonable for the jury to find that this did not present an unreasonable risk of injury since the frame was still attached to the elevator car by five brackets. The frame only fell six to eight inches and was still at least six feet eight inches above the floor. Moskal further testified that there was no evidence that any of the safety mechanisms were triggered as a result of the incident.
Finally, the jury was obviously swayed heavily by the fact that Harry suffers hallucinations as a result of paranoid schizophrenia. Dr. Blackburn testified that approximately two months before the alleged incident, he increased Harry’s medication because of his increased complaints of paranoia. Based on these findings, the jury was obviously presented with at least two permissible views of the evidence, and they chose to believe that the accident did not happen. After reviewing the liprecord, we cannot say that this finding was unreasonable. The Thomases argue that they were penalized by the jury for not being very articulate, or learned, and unable to clearly express themselves. However, where “a factfinder’s finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” Rosell, 549 So.2d at 845. Therefore, the jury could have properly concluded that the Thomases were simply not able to prove fault on the part of the defendants. We find that this assignment of error is without merit and affirm the findings of the jury.
STRICT LIABILITY
The Thomases’ second assignment of error alleges that the jury verdict and the trial court’s dismissal of their motion for a judgment notwithstanding the verdict were both manifestly erroneous because they proved a cause of action under strict liability, and the defendants failed to rebut their proof by showing that the harm was caused by victim fault, the fault of a third person, or by an irresistible force. They argue that the defendants’ failure to prove any of these should have, as a matter of law, resulted in a verdict in their favor.
Article 2322 of the Louisiana Civil Code provides that “[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.” In order to recover under this article against either the Medical Center or Dover, the Thomases must *712 prove that the defendants had the custody, care or garde of the elevator; that it posed an unreasonable risk of injury; and that their damages occurred through that risk. Loescher v. Parir, 324 So.2d 441(La.l975); Entrevia v. Hood, 427 So.2d 1146 (La.1983); Rabito v. Otis Elevator Co., 93-1001, 93-1002 (La.App. 4 Cir. 2/11/94); 633 So.2d 368, writ granted, 94-0949 (La.6/17/94); 638 So.2d 1075, on Ljiremand, 93-1001, 93-1002 (La.App. 4 Cir. 12/15/94); 648 So.2d 18; and Wiggins on Behalf of Wiggins v. Ledet, 94-0485 (La.App. 4 Cir. 9/29/94); 643 So.2d 797. If the Thomases are able to prove these three essential elements by a preponderance of the evidence against either or both of the defendants, then the Medical Center and Dover would only be absolved of their liability if they could prove that the Thomases’ damages were caused by their own fault, by the fault of a third person, or by an irresistible force. Inseco v. Cambridge Mutual Fire Ins. Co., 447 So.2d 606 (La.App. 3 Cir.), writs denied, 449 So.2d 1349, 1350 (La.1984).
The Thomases argue that they satisfied them burden of proof because: (1) their expert, Moskal, testified that the elevator was defective because the retainer bolt on the ceiling frame was not properly placed into the ceiling bracket when the Thomases entered the elevator; (2) the elevator was located on the premises of the Medical Center, proving ownership, and a maintenance contract existed between the Medical Center and Dover, proving custody or garde; and (3) because both Annie and Harry proved that they had objective injuries following the accident and that all doctors concluded they were truthful and showed no signs of malingering. The Thomases further argue that neither the Medical Center nor Dover have alleged or proven one of the defenses which would absolve them of fault. Thus, since they have proven the three elements required for them recovery under strict liability and the defendants have failed to rebut their liability, the Thomases assert that they are entitled to a verdict in them favor.
However, as we stated above, the findings of fact by a jury are subject to the manifest error — clearly wrong standard of review. Rosell, 549 So.2d 840. Whether the elevator posed an unreasonable risk of injury is a question of fact for the fact finder to determine. Gilboy v. American Tobacco Co., 582 So.2d 1263 |t2(La.l991). The jury was not clearly wrong in finding that the Thomases failed to satisfy them burden of proof by a preponderance of the evidence. Other than their own testimony, which was fraught with numerous inconsistencies, incoherent at times, rambling, and unresponsive, the Thomases offer only that the ceiling fell six to eight inches to prove that an accident occurred and that they were injured as a result. It is from that evidence that Moskal reasoned that the elevator presented an unreasonable risk of harm. Even Moskal equivocated when pressed about the fault of the defendants. Finally, if the fact finder determined that the elevator presented an unreasonable risk of harm, there is no evidence that the ceiling tile which fell six to eight inches to a height of six feet eight inches above the floor of the elevator caused the Thomases’ injuries. Absent evidence that the dangerous condition caused the harm, the jury could have properly concluded that the Thomases did not prove that them injuries occurred through that risk. We, therefore, hold that the jury’s verdict and the trial court’s ruling are affirmed and that this assignment of error is without merit.
RES IPSA LOQUITUR
In their third assignment of error, the Thomases allege that the trial court committed manifest error by not applying the doctrine of res ipsa loquitur to the facts presented. The Thomases argue that even though they did not argue this theory of recovery in the pleadings and at the jury trial, under La.Code Civ.P. art. 1154, they are not precluded from recovering under res ipsa loqui-tur because they are allowed to amend the pleadings, even after judgment is rendered, so that they conform to the evidence presented at trial. Thus, the Thomases argue that the evidence presented at trial raised the issue of res ipsa loquitur and the trial court erred when he dismissed them motion for judgment notwithstanding the verdict and, in the alternative, for ahsnew trial.
*713 In Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La.1992), the supreme court stated:
Res ipsa loquitur, as “a qualification of the general rule that negligence is not to be presumed,” must be sparingly applied. Day v. National U.S. Radiator Corp., 241 La. 288, 128 So.2d 660, 665 (1961). Generally, it obtains when three requirements are met: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant’s part,
(citations omitted).
After considering the evidence, we cannot say that the trial court erred in failing to apply the asserted doctrine to the facts at issue. Although Moskal’s testimony was un-contradicted by any other expert, his testimony contradicted the Thomases’ testimony, such that doubts were obviously raised in the minds of the jury members as to the cause of the Thomases’ injuries. Moskal testified that although the retainer bolt was not properly placed in the bracket, the ceiling remained six feet eight inches from the floor. There was no evidence that the elevator, which had maintenance preformed on it weekly (eight hours of maintenance was performed on it six days before the incident), ever shook or vibrated in the manner described by the Thomases before or after the incident. Mos-kal also testified that it was his opinion that it was impossible for the elevator to shake and vibrate as described by the Thomases. Further, the evidence reflects that the safety devices located on the elevator were not triggered on the day of the accident. We find that it was reasonable for the trial court to reject the Thomases’ contention that the doctrine of res ipsa loquitur applied in this case and to deny the Thomases’ motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. This assignment |i4of error is also without merit and dismissed. The trial court’s ruling is affirmed.
DAMAGES
In a fourth assignment of error, the Thom-ases ask this court to award them reasonable damages after reviewing the record. Since we affirm the finding of the jury and the ruling of the trial court, any discussion on this assignment is pretermitted.
CONCLUSION
For the forgoing reasons, the verdict of the jury is affirmed in favor of the defendants, the Medical Center of Southwest Louisiana and Dover Elevator Company. The ruling by the trial court denying the motions by the plaintiffs, Annie and Harry Thomas, for judgment notwithstanding the verdict and, in the alternative, for a new trial, is also affirmed. The costs of this appeal are assessed against the plaintiffs-appellants, Annie and Harry Thomas.
AFFIRMED.
THIBODEAUX, J., dissents and assigns reasons.
COOKS, J., dissents.