J2SHORTESS, Judge.
Chantel Spiller (Spiller), age nineteen, died on August 22, 1992, after she lost control of her vehicle on Sullivan Road in East Baton Rouge Parish, crossed the center line, and crashed broadside into a vehicle driven by Mark Gangi. Her parents, Charles and Sylvia Spiller (plaintiffs), brought this 'wrongful death and survival action against the Parish of East Baton Rouge (Parish) and the State of Louisiana, through the Department of Transportation and Development (DOTD). After a two-day trial on the merits, the trial court dismissed plaintiffs’ suit. Plaintiffs appeal.
I. FACTS
The trial court heard the testimony of twelve fact witnesses, including five eyewitnesses to the accident, two investigating officers, and two engineers, as well as six engineers who testified as experts in traffic engineering, accident reconstruction, highway design, and highway safety. The following facts regarding the roadway were undisputed.
Sullivan Road was designed and built by DOTD in 1955 with two ten-foot wide lanes with four-foot wide shoulders. It was overlaid by DOTD in 1977 and changed to two twelve-foot wide lanes with two-foot shoulders. Ownership of Sullivan Road was transferred from the Louisiana State Highway System to East Baton Rouge Parish in 1987, and the road has been under the care, custody, and maintenance of the Parish ever since.
This accident occurred in an eight-degree curve. The posted speed limit for the curve is forty-five miles per hour. In 1990 the Parish erected a 484-foot long guardrail along the southbound lane to protect vehicles from leaving the road in the curve and traveling down an embankment sloping to a ditch. The distance of the guardrail from the fog line marking the outside edge of the southbound lane varied from two to four feet.
| ,sThe eyewitnesses agreed on the following facts. Spiller did not appear to be speeding. The rear of her vehicle began to slide toward the edge of the road. Suddenly her vehicle crossed the center line and slid sideways into Gangi’s vehicle. Gangi’s vehicle and two other vehicles were in the oncoming lane. David A. Ramsey and his wife Alisha were in the second car behind Gangi and witnessed the accident. Alisha stated: “[A]ll of a sudden her car just cut a flip and went sideways and slid....” David gave this description: “She was coming through the curve ... and it was like it just got a little sideways and it shot across the road like somebody pushed it that way.” The witnesses who went to the unconscious Spiller immediately after the accident testified she gripped a cassette tape in her left hand, and her car stereo was playing very loudly.
Gangi had an unimpaired view of Spiller’s vehicle before the accident. He stated she was more than one-third and less than one-half into the curve when she lost control. He saw the wheels of Spiller’s car turn to the left, toward the center line. The vehicle’s slide became more pronounced, and the car then went almost directly across the road into his path.
Plaintiffs presented several theories regarding the cause of the accident. They contended DOTD improperly designed the curve, the roadway was too slippery, the super elevation of the curve was too low, the “slippery when wet” sign was missing, and the rail presented a psychological hazard. For every expert’s opinion, however, there was a contradictory opinion by another expert. The trial court noted this and found the testimony of the fact witnesses gave more guidance in determining liability in this case. In written reasons the court stated:
*1321 Experts were presented for both sides— each disagreeing with the other as to the condition of the road, curve, and guardrail. Each expert gave Rhis opinion as to the cause of the accident. This Court, however, finds that the fact witnesses, those that actually witnessed the accident, provided greater insight as to the events surrounding the accident and the cause of the accident.
[[Image here]]
Although [plaintiffs] argue the design and condition of the road, the design of the curve, and the “intimidation factor” and location of the guardrail may, and possibly could have caused the accident, neither the record nor the fact witnesses support such theories. The only reasonable evidence in the record to indicate why the deceased crossed the [center line] into the oncoming traffic was her [apparent] inattentiveness on the day of the accident, as evidenced by her “turning the wheel,” the cassette tape in her hand, and the loud music playing when the vehicle came to rest. Although plaintiffs raised numerous possible explanations for the deceased’s vehicle being on the wrong side of the road, each were based merely upon plaintiffs’ speculation. The evidence established that the most logical explanation for Ms. Spiller’s presence on the wrong side of the road was that she was inattentive and distracted by her own actions at the time of the accident. Plaintiffs failed to demonstrate how anything other than the actions of the deceased was the cause in fact of the accident.
II. ALLEGED LEGAL ERRORS
Plaintiffs set forth ten assignments of error in their brief. We shall first address the six legal errors which plaintiffs allege were committed by the trial court.
A.Exclusion of evidence
Plaintiffs contend the trial court improperly excluded evidence, as subsequent remedial measures, regarding rehabilitation of this roadway after the accident, removal of the guardrail, and a subsequent fatal accident at this location. Despite defendants’ efforts to exclude this information, evidence of these facts was introduced through various witnesses. We need not decide whether the documents plaintiffs sought to introduce were improperly excluded because the trial court was well aware of these facts by the conclusion of the trial.
B. Presumption of negligence
Plaintiffs also contend the trial court committed legal error in presuming Spiller was negligent because she was in|5the wrong lane when the accident occurred. This presumption is based on well-settled jurisprudence and was recently reiterated in Staple-ton v. Great Lakes Chemical Corporation, 627 So.2d 1358, 1361 (La.1993): “When a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident.” (quoting King v. Lowviere, 543 So.2d 1327, 1331 (La.1989)).
Plaintiffs contend, without citation of authority, that the presumption is applicable only if the motorist in the wrong lane is sued, not if the motorist in the wrong lane sues a governmental entity because of an alleged roadway defect. They state in brief: “All the cases relied upon by the trial court deal with suits between drivers.... ” Plaintiffs have overlooked llano v. Louisiana Department of Transportation & Development, 519 So.2d 796 (La.App. 1st Cir.1987), writ denied, 523 So.2d 861 (La.1988), which was quoted by the trial court, wherein DOTD was the only defendant, and numerous other cases in which DOTD was a codefendant. This assignment of error has no merit.
C. Testimony of Dr. Blaschke
Plaintiffs contend the trial court erred in relying on the testimony of the expert for the Parish, Dr. Joseph D. Blaschke, because 90% of the testimony he has given in this state *1322 has been on behalf of defendants. The trial court’s written reasons, however, do not evidence a reliance on Dr. Blaschke’s testimony, or the testimony of any expert, for that matter. As quoted above, the trial court found the testimony of the fact witnesses provided greater insight into the cause of the accident than the testimony of the experts. Thus, this assignment of error is without merit.
D.“Slippery when wet” signs
(Plaintiffs contend the trial court failed to consider the absence of “slippery when wet” signs as a defect, erroneously relied on the notice requirement of Louisiana Revised Statute 9:2800, and failed to find the absence of the signs was a legal cause of the accident. These contentions fall for two reasons.
First, no evidence shows the signs were not in place at the time of the accident. Timothy A. Cummings, the Parish’s traffic engineer, testified “slippery when wet” signs were installed in this location in 1990 and were replaced in June 1993, ten months after the accident. He could not state for certain the signs were in place on the day of the accident, but nothing in his file indicated the signs were missing.
The only other witness who testified regarding the signs was Gangi, who was traveling in the opposite direction from Spiller at the time of the accident. He stated he was familiar with the roadway in both directions and did not recall seeing a “slippery when wet” sign for the southbound lane. Plaintiffs’ counsel then stated: “As a matter of fact there was not one.” The Parish’s objection to this remark was sustained. Plaintiffs’ counsel then asked Gangi if he recalled stating in his deposition there was no sign. Gan-gi replied: “Correct.” There was no further testimony from Gangi regarding the signs.
Second, there was not a shred of evidence introduced from any of the six experts as to whether the absence of a “slippery when wet” sign could have played a part in this accident. Without any evidence to show the lack of a sign was a legal cause in fact of the accident, its alleged absence is irrelevant.
E. DOTD’s duty
The trial court cited numerous cases in its written reasons, some of which were inapplicable under the facts of frthis ease.[1] Plaintiffs have seized upon one of the trial court’s extraneous citations, which was not relied on in its holding, to argue the trial court committed legal error.
The trial court cited Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), for the proposition that a governmental entity must keep the highways reasonably safe for non-negligent motorists. The law is clear that the roadways must be kept safe not only for the prudent, but also for those “who are momentarily inattentive,” Ledbetter v. State, 502 So.2d 1383, 1387 (La.1987), or who instinctively overreact. LeBlanc v. State, 419 So.2d 853, 856 (La.1982).
When one reads the totality of the trial court’s written reasons, it is clear the court did not rely on Sinitiere in reaching its ultimate legal conclusion. The court held plaintiffs failed to carry their burden of proof because their witnesses speculated, but did not prove, a defect in the roadway caused the accident. The court found plaintiffs failed to prove any cause in fact of the accident other than Spiller’s negligence. Thus, the trial court’s superfluous citation of Sinitiere has no effect on the validity of the court’s legal or factual conclusions.
F. Multiple legal causes
Plaintiffs complain the trial court failed to consider there could be more than one cause in fact of this accident. Plaintiffs are correct that there may be more than one cause in fact of an accident, but multiple *1323 causes are not always present in an accident. A plaintiff has the burden of proving defendant’s action, inaction, or defective thing was a cause in fact. We agree with the trial court that plaintiffs failed to meet this burden.
III. ALLEGED FACTUAL ERRORS
| gPlaintiffs contend the trial court was manifestly erroneous in failing to find the roadway was defective, in failing to find the guardrail was unreasonably hazardous, in finding Spiller was at fault in this accident, and in failing to award damages to plaintiffs.
The plaintiff has the burden of proving his case by a preponderance of the evidence. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proven is more probable than not. Cay v. State, 93-0887 (La. 1/14/94), 631 So.2d 393, 395.
Plaintiffs brought this suit under theories of both negligence and strict liability. Under either theory, the duty owed is the same, and a finding of cause in fact is essential to the assessment of liability. Theriot v. Lasseigne, 93-2661, p. 5 (La. 7/5/94), 640 So.2d 1305, 1310.[2] Once the fact finder determines a plaintiff has failed to prove either duty or cause in fact by a preponderance of the evidence, his inquiry ends; he need not determine whether the other elements of plaintiffs case have been met. Id.
A cause in fact determination is one of fact on which appellate courts must accord great deference to the trial court. Gay v. State, at 398. This factual finding may be reversed only if the trial court is manifestly erroneous. Theriot, 93-2661 at 5, 640 So.2d at 1310. If there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993). The issue to be resolved by the reviewing court is not whether the trier ofjgfact was right or wrong but whether the fact finder's conclusion was a reason-able one. Theriot, 640 So.2d at 1313; Stobart, 617 So.2d at 882-883.
Plaintiffs’ contentions the roadway was defective and the guardrail was a hazard are based on the testimony of their experts. The trial court rejected that testimony. As the supreme court explained in Middle Tennessee Council Inc. v. Ford, 274 So.2d 173, 177 (La.1973), the trial court is in the best position to determine the credibility of experts.
The weight to be given to the testimony of experts is largely dependent upon their qualifications and the facts upon which their opinions are based. However, the sincerity and honesty of the opinions expressed are matters which the trial judge is in a particularly advantageous position to determine. It is, in effect, in part, a question of credibility, and when the experts are widely disparate in their conclusions, the rule has special relevance.
The supreme court recently reiterated this rule in Quinones v. United States Fidelity & Guaranty Company, 93-1648 (La. 1/14/94), 630 So.2d 1303,1308.
Credibility determinations are subject to the strictest deference, and the manifest error standard demands great deference to the trier of fact’s findings. Theriot, 640 So.2d at 1313. In this case, six experts and several lay witnesses gave widely divergent opinion testimony. The trial court did not choose between them. Instead, the court found the undisputed facts shown by the eyewitnesses formed the most credible basis for decision in this case. In Theriot the court stated the trial court apparently gave more weight to
*1324 the expert who attributed the cause of the accident solely to driver error but noted “the court need not have chosen between the experts in forming its opinion; the facts alone provide a basis for the trial court’s decision.” 640 So.2d at 1313.
IV. CONCLUSION
After a thorough review of the record, we find the trial court did not commit manifest error in finding plaintiffs did | i0not bear then-burden of proving either that the roadway was defective or that the guardrail was hazardous. Furthermore, in the absence of proof of any other legal cause in fact, we find no manifest error in the trial court’s factual finding that Spiller’s negligence was the sole cause of the accident. Having found the trial court’s findings were based on a permissible view of the evidence, we need not address plaintiffs’ remaining contentions.
We truly sympathize with Charles and Sylvia Spiller, who suffered a tremendous loss in the death of their only child. Ours is a most difficult duty in this case because, as we have said above, we can find no manifest error by the trial court. We must, therefore, affirm its judgment, dismissing plaintiffs’ suit at their costs.
AFFIRMED.

. For example, the court cited a case regarding a motorist's duty to maintain a proper lookout for hazards in the roadway with which he might collide, although in this case the accident was not caused by Spiller running into a hazard.

. Under a duty-risk analysis, the plaintiff in a negligence action must prove cause in fact, duty, breach, legal cause or scope of protection, and damage. Under strict liability, the plaintiff must prove custody or garde, defect (which includes duty, breach, and legal cause), and cause in fact. See Theriot v. Lasseigne, 93-2661, p. 5 n. 6 (La. 7/5/94), 640 So.2d 1305, 1310 n. 6.