JjBAGNERIS, Judge.

FACTS AND PROCEDURAL HISTORY

On June 10, 1993, Douglas McReynolds (“Mr. McReynolds”) was operating a 1993 Ford F-700 two-ton flatbed truck owned by his employer, Western Wireline (“Western”) in a southerly direction on Highway 23 in Plaquemines Parish. When his vehicle reached the area of mile pole marker 21, near the City of Empire, Mr. McRey-nolds’ truck entered a part of the highway, approximately 30 feet long, which was *449 caved in. Mr. McReynolds was traveling at approximately 55 miles an hour at this time, and the jolt of the truck as it entered into the deepest part of the caved-in area caused his neck to violently jolt forward and back, striking his forehead on the steering wheel of his truck. There were two other passengers in the truck at the time of the incident, yet neither one experienced any debilitating injuries.
Shortly thereafter, Mr. McReynolds stopped at a Shell station located on Highway 23, approximately 500 yards south of the accident site, operated by Larry Buras (“Mr. Buras”). He informed Mr. Buras of the incident, and purchased a pair. Lof gloves and various food items before continuing on to his destination. He returned to the Western office in Belle Chasse, Louisiana. Later that day, Mr. McReynolds consulted Dr. Charles Anastasio (“Dr. Anastasio”).
Notably, on June 9, 1993, Mr. McRey-nolds suffered another work-related incident while manually loading eight (8) foot sections of pipe, weighing between 80 to 100 pounds each, on the back of the company truck. His suffered an injury to his neck and shoulder area as a result of this accident. On September 10, 1993, McRey-nolds underwent a cervical dissectomy at C5-C6 by Dr. Carl Culicehia (“Dr. Culicc-hia”).
Some four years later on or about February 12, 1997, Mr. McReynolds re-aggravated his neck while driving down a different section of Highway 23 when he hit a bump in the road. Although, he did not report any symptoms as a result of this incident, he acknowledged that his neck had been gradually getting worse since Dr. Culicehia did the surgery. Mr. McRey-nolds ceased to work on February 18, 1997 because of headaches.
On May 8,1997, Mr. McReynolds underwent a second surgery to fuse the C-5 disc and C-6 discs that had collapsed. Dr. Carlos Gorbitz, a neurosurgeon, performed a two-level anterior cervical dissectomy and fusion with a bone-bank bone and cervical plate. The surgery resulted in a good fusion of the spine, and Mr. McRey-nolds was discharged, basically asymptomatic on October 16, 1997. He returned to work at Western on or about August 26, 1997.
Mr. McReynolds eventually filed suit against the State of Louisiana, through DOTD (“DOTD”) for failing to properly maintain the roadway in question, and specifically because (1) the caved-in portion of Highway 23 was unreasonably dangerous to the motoring public, (2) that the State knew or should have known of 13the condition, (3) they failed to correct the condition or warn oncoming traffic and, therefore are liable to the him for damages.
On February 6 and 11, 1998, this matter was tried and was taken under advisement at the conclusion of the trial. On October 30, 1998, the trial judge entered judgment in favor of Mr. McReynolds and against the DOTD. The trial judge awarded Mr. McReynolds one hundred ninety thousand seven hundred forty-one and 6%oo ($190,-741.53) with the Court determining the general and special damages in the following manner:
$40,000.00 — past physical pain and suffering
$30,000.00 — past mental pain and suffering
$40,000.00 — future pain and suffering
$50,000.00 ■— future mental pain and suffering
$34,864.10 — medical expenses
On November 12, 1998, Mr. McReynolds filed a Motion To Amend Judgment to correct a typographical or calculation error in the October 30, 1998 Judgment. On November 13, 1998, the trial judge signed an order amending the original judgment to provide that Mr. McReynolds was to be awarded total damages in the amount of $194,864.10. In addition, the trial judge awarded, Lisa McReynolds, Mr. McRey-nolds’ wife, ten thousand and no/100 dollars ($10,000.00).
The trial judge also entered a judgment in favor of the Louisiana Workers’ Compensation Corporation recognizing its compensation lien in the amount of thirty-four thousand eight hundred sixty-four and -%o *450 dollars ($34,864.10). On November 16, 1998, the DOTD filed a Request for Written Reasons.
|4On July 26, 1999, a Consent Judgment was signed by the parties fixing expert fees retained by Mr. McReynolds as follows:
Robert Lipp, Professional Engineer $840.00
Bobby Robert, Rehabilitation Expert $958.00

DISCUSSION

Standard of Review

La. C.C.P. art 1917 provides the following:
In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than 10 days after signing the judgment.
When the trial court’s reasons for judgment do not articulate the theory or the evidentiary facts upon which the conclusion is based, the reviewing court will be unable to give the finding the usual deference attributed to the trier of fact. Further, when one or more of the trial court’s errors interdicts its fact finding process, the manifest error standard is no longer applicable and, if the record is otherwise complete, the appellate court may make its own independent review of the record and decide the case. However in the absence of manifest error, a reviewing court should not disturb the factual determination of the trial court. In order to find manifest error, the record must support the conclusion that the factual determinations were clearly wrong. McCartney v. Columbia Heights Nursing Home, 25, 710 (La.App. 2 Cir. 3/30/94), 634 So.2d 927; Thompson v. PetroUnited Terminals, Inc., 536 So.2d 504 (La.App. 1 Cir.1988), writ denied, 537 So.2d 212, 213 (La.1989).
When findings of fact are based upon decisions regarding the credibility of witnesses, respect should be given to those conclusions, for only the fact finder can be aware of the variations in demeanor and tone of voice which bears so heavily on | ¡¡understanding and believing what is said. The reviewing court is mandated not to substitute its own evaluations and inferences for those of the trier of fact. Bolton v. Louisiana State University Medical Center, 601 So.2d 677 (La.App. 2 Cir.1992); Pereira v. Louisiana Coca-Cola Bottling Co., 620 So.2d 315 (La.App. 4 Cir.1993). When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).

LAW AND DISCUSSION

I. THE TRIAL COURT DID NOT ERR IN FINDING THE DOTD LIABLE FOR MR. McREYNOLDS’ DAMAGES, NOR DID THEY ERR IN NOT ALLOCATING SOME FAULT to mr. McReynolds.
A plaintiff may proceed against the DOTD under theories of negligence or strict liability. Thus, the burden of proof is the same under either theory when DOTD is the defendant. The plaintiff must show: 1) the property which caused the damage was in the custody of the DOTD; 2) the property was defective because it had a condition that created an unreasonable risk of harm; 3) the DOTD had actual or constructive notice of the risk; and 4) the defect in the property was a cause-in-fact of the plaintiffs injuries. Bessard v. State, DOTD, 94-0589 (La.11/30/94), 645 So.2d 1134, 1136; Fortune v. City of New Orleans, 623 So.2d 701 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1126 (La.1993).
Under either negligence or strict liability theories, the state’s duty through DOTD is the same. This duty, is to keep the highways and its shoulder in a reasonably safe condition for motorists exercising ordinary care and reasonable prudence. Brown v. Louisiana Indemnity Co., 97- *451 1344 (La.3/4/98), 707 So.2d 1240. Whether the DOTD breaches its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of every case. Lee v. State, Through DOTD, 97-0350 (La.10/21/97), 701 So.2d 676; Hunter v. DOTD, 620 So.2d 1149 (La.1993); LeBlanc v. State, 419 So.2d 853 (La.1982).
A. The property that caused the accident was in the custody of the DOTD.
All parties have stipulated that the State of Louisiana had custody and control of the portion of the roadway, Highway 23, that is the subject of this litigation.
B. The property was defective because it had a condition that created an unreasonable risk of harm to the traveling public and the DOTD had actual or constructive notice of the risk.
The DOTD asserts that Harry Shapiro (“Mr. Shapiro”), as State adjuster and investigator, took numerous measurements and photographs of the depressed area by removing a hot-mix, asphalt patch exposing the previously depressed area in November of 1997 during the course of the DOTD’s accident reconstruction. DOTD contends that this is the standard practice used by DOTD for measuring dips or depressions such as the one made the subject of lawsuits. The DOTD concluded from their findings that the portion of the roadway that is the subject of this litigation had a depression that measured approximately three and one half (3 1/2) inches over a length of about forty (40) feet. Generally, the DOTD Maintenance Manual provides that the threshold level to consider in scheduling maintenance of a depression is met when the depressions are over one (1) inch deep in ten (10) or when water ponds one-half Qh) inch deep.
|7These measurements and photos were then reviewed by Robert P. Roth (“Mr. Roth”), the DOTD Maintenance Engineer for District 02, who surmised that such a depression did not warrant immediate repair and was not considered by DOTD to be a hazardous condition. Moreover, he opined that upon review of the Hayden videos showing the condition of the roadway on April 16, 1993 and May 7, 1993, it was clearly evident that the road conditions did not depict a hazardous condition.
Alternatively, Mr. McReynolds asserts first that the DOTD’s estimate of the size of the depression at the time of the accident in 1993 is mere speculation as the DOTD was unsuccessful in presenting any hard evidence confirming that the condition of the roadway in 1997 after the DOTD removed the patchwork was substantially the same as it was in 1993 at the time of the accident. Moreover, he proffers that the only two DOTD employees, Frank Oser and Rodney Poree, who could have had any knowledge of the condition of the roadway in 1993 both testified at trial that they had no recollection of this particular, depressed or caved-in portion of the roadway. Nevertheless, Mr. McReynolds insists that the only evidence that suggest any similarity between the 1993 and 1997 condition of the roadway is the uncorroborated testimony of Mr. Roth and Mr. Shapiro, both of whom are employees of DOTD, who in his opinion has no personal knowledge of the condition of the roadway in 1993.
Secondly, Mr. McReynolds asserts that the DOTD’s tests in 1997 were conducted under vastly different conditions than that of the actual accident in 1993, therefore yielding unreliable results. Specifically, Mr. McReynolds states that the test vehicle carried a load of 6500 pounds, while the vehicle Mr. McReynolds was riding carried no load at all; the 1997 test subject was six foot, three (6’3”) inches | stall, while Mr. McReynolds is five foot, nine (5’9”) inches tall; although the truck was the same model, it was a different truck therefore, it could have very naturally had a different “natural frequency” than that of the actual truck in question; and finally, the test *452 subject knew that he was about to travel over a depression in the road, and easily could have physically braced himself for such an impact, while for someone in Mr. McReynolds’ position, the impact was a spontaneous occurrence that he had very little control over, both physically or otherwise.
Finally, Mr. McReynolds asserts that Mr. Buras and Russell Hayden (“Mr. Hayden”), long-time residents of the area with no prior connection to Mr. McReynolds, both testified that at the time of the accident, the depression appeared to be between eight (8) to fourteen (14) inches deep, and about thirty (30) to thirty-five (35) feet long. Moreover, they both testified that the deteriorating condition of the roadway had existed for some time. Thus, Mr. McReynolds contends that the depression met the threshold for priority work under the DOTD guidelines, and the DOTD had actual or constructive notice of the risk. Accordingly, he asserts that the trial court was justified in assessing minimal weight to the test results introduced into evidence by the DOTD refuting the hazardous condition of the roadway in June of 1993. We agree.
We must address the issue of prescription regarding the DOTD’s Request for Written Reasons. As was stated previously, the DOTD had ten (10) days in which to file such a request. The trial judge handed down his judgment on Friday, October 30, 1998. Taking into account the observation of All Saints’ Day on Monday, November 3, 1998, a federal and state holiday in which the court/the Clerk of Court’s offices were both closed, the DOTD timely filed their Request for Written Reasons on Monday, November 16, 1998.
13Notwithstanding, this Court cannot so frivolously discard the holding of the trial judge who for two days listened to the testimony of Mr. Roth and Mr. Shapiro regarding the accident reconstruction and the testimony of Mr. Buras and Mr. Hayden regarding the conditions of the roadway at the time of the accident. The trial judge also reviewed numerous photos, measurements, and videotapes of the accident scene. Most • importantly, the trial judge was in the best position to accurately assess the demeanor of each witness and the credibility of their testimony during those two days.
When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate may feel that its own evaluations and inferences are as reasonable. This well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses, as compared with the appellate court’s access only to a cold record, but also upon the proper allocation of trial and appellate functions. Thus, where there are two permissible views of evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
For these reasons, we find no error with the decision of the trial court, and hold that the property was defective because it had a condition that created an unreasonable risk of harm to the traveling public and the DOTD had actual or constructive notice of the risk.
C. The defect in property was a cause-in-fact of Mr. McReynolds’ injuries.
The DOTD charges that a defendant’s conduct is a cause-in-fact of the harm only if it is a “substantial factor” in bringing about the harm. Graves v. Page, 96-Once the fact finder determines a plaintiff has failed to prove duty or cause-in-fact by a preponderance of the evidence, this inquiry ends, and he/she need not determine whether the other elements of the plaintiffs’ case have been met. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1310; Spiller v. State, through DOTD, 668 So.2d 1318, 1323 (La.App. 1 Cir.1996), writ denied (La.4/26/96), 672 So.2d 910. Thus, [2201m (La.11/7/97), 703 So.2d 566, 570. *453 the DOTD asserts that the depression depicted in the Mr. McReynolds’ video and in their photographs did not pose an unreasonable risk of harm to the traveling public and was not a cause-in-fact of Mr. McRey-nolds’ accident.
The DOTD promulgates in support of their arguments the testimony of Dr. Alfred P. Bowels, II (“Dr. Bowels”), and a tendered expert in the area of bio mechanical engineering and accident causation, who testified that he did not believe that this incident caused Mr. McReynolds’ disc injury. Moreover, Dr. Bowels suggest that in his opinion it was scientifically impossible for Mr. McReynolds to have sustained the type of injury he complains of as a result of driving over the roadway depression made the subject of this lawsuit.
Conversely, Mr. McReynolds introduced the testimony of Dr. Culicchia, the physician who performed his initial surgery, a cervical dissectomy at C5-C6, who contends that the injury was a direct cause-in-fact of the accident. Moreover, Mr. McReynolds asserts that his second surgery was the result of the failure of the first surgery to provide the intended relief, as pointed out by the DOTD.
Secondly, the DOTD attempts to discount the reliability of both Mr. Buras and Mr. Hayden’s testimony. They assert that despite Mr. Buras’ testimony that there had been a couple of incidences where both boats and trailers had become disconnected from the towing vehicles in the vicinity of the subject incident, he |nhad not witnessed any of these incidents nor did he have any actual personal knowledge of the cause of the incidents. Moreover, they assert that Mr. Hayden was hired by Mr. McReynolds to provide videotape footage of the depressed area that would subsequently be used at trial. In addition, they asserted that Mr. Hayden neither personally witnessed the incidents involving the vehicles filmed, nor did he ever properly measure the length and depth of the depression at the time of incident. Both of these arguments lack merit.
Moreover, we find that neither Mr. Bu-ras nor Mr. Hayden had any monetary stake in this case. Further the trial judge took Mr. Buras’ testimony for what it was, the testimony of a man who has spent his whole life traveling back and forth on Highway 23, and who is quite familiar with any significant depressions and bumps in the road. Also, despite the DOTD’s allegations regarding the validity of the videos made by Mr. Hayden, these videotapes were made some six weeks before the June 10, 1993 accident, and therefore any suggestion of impropriety on the part of Mr. Hayden by DOTD is unfounded.
The DOTD has also offered the testimony of Jeanine McCannon (“Ms. McCan-non”), the DOTD lock master in Empire, who testified that she frequently traveled over the area made the subject of litigation, and in her opinion the depression was not significant enough at the time of the alleged incident to warrant reporting to her supervisor for the scheduling of immediate maintenance.
Finally, the DOTD also requested that we consider past decisions by our esteemed colleagues of the First Circuit Court of Appeal and the Third Circuit Court of Appeal. We have reviewed each case carefully and thoughtfully in reaching our decision. Nevertheless, we find that the facts of this particular matter are clearly distinguishable from the facts of both cases, specifically due to what we 11?ppine to be a substantial roadway depression in both depth and length. Likewise, we find that a subjective and independent review of the facts and circumstances of this case by this Court will better serve the interest of justice. For these reasons, we respectfully decline to follow the articulated holdings of the First and Third Circuits.
In the present case, we find after a review of the record that the trial judge was presented with two permissible yet different views as to whether Mr. McRey- *454 nolds’ injury was a cause-in-fact of his injury. After hearing the law, the evidence, and the arguments of counsel, the trial judge ruled in favor of McReynolds, holding that the depression in the roadway that is the subject of this litigation was the cause in fact of his injury, and thus the DOTD failed to maintain the roadway in question. We agree with this holding.
Moreover, we have not discovered any additional evidence with regard to witness credibility or inconsistent testimony that would lead us to second-guess the trial judge. Therefore, upon a thorough review of the record, we affirm the decision of the trial court.
For these reasons, we hold that the defect in property was a cause-in-fact of Mr. McReynolds’ injuries.
D. The trial court did not err in failing to allocate any fault to Mr. McReynolds
The DOTD asserts that a motorist is required to maintain reasonable vigilance or to see that which he should have seen. In line with that, they argue that because Mr. McReynolds previously traveled over the subject areas of Highway 23, prior to his incident, he was aware of the condition of the highway and was able to traverse the roadway without incident. We disagree. | n 3Notwithstanding, we have not seen any evidence that suggests that Mr. McReynolds was speeding, daydreaming and/or sleeping, or otherwise handling his truck in a reckless manner on the morning in question. For these reasons, we hold that the trial court did not err in not allocating any fault to Mr. McRey-nolds.
E. It was proper for the trial court not to compensate Mr. McReynolds for Loss of Earning Capacity or to award a reasonable amount of damages for past and future physical and mental pain and suffering.
In Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976), the Louisiana Supreme Court held that when reviewing the allocation of fault on appeal, the ultimate determination by an appellate court as to whether- a given judge or jury abused their discretion as a matter of law is a judgment call. The court in Coco held that only after making the finding that the record supports the facts that the lower court abused its discretion can the appellate court disturb the award, and then only to the extent of lowering it, or raising it, to the highest or lowest point which is reasonably within the description afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion simply to decide what it considers an appropriate award on the basis of the evidence. The rationale for this rule is that the trier of fact has more direct contact with the parties, the witnesses, and the evidence and thus can better evaluate the true extent of plaintiffs injury, whereas the court of appeal bases its decision solely on the written record, briefs, and oral argument. Ernest L. Nix, Jr., “Appellate Review of Damage Awards — An Affirmation of the Trial Court’s “Much Discretion”,” 38 La. L.Rev. 628, 629 (1978). Additionally, the Supreme Court has stated that since an award of damages for personal injuries is of necessity somewhat arbitrary and also must vary greatly with the facts and 114circumstance of each case, the trial court is entrusted with large discretion to make such awards, and that discretion should not be disturbed on appellate review. Id. We find that the trial judge properly witnessed and reviewed all of the testimony regarding Mr. McReynolds’ injuries, both past and future. Moreover, the trial judge was able to conduct a personal evaluation of Mr. McReynolds’ condition and likely determine the nature and extent of his injuries.
Therefore, for these reasons, we affirm the decision of the trial court.
II. THE TRIAL COURT DID NOT ERR IN PERMITTING THE EXPERT TESTIMONY OF ROBERT LIPP UNDER THE STANDARD SET FORTH IN DAUBERT.
*455 Article 702 of the Louisiana Code of Evidence provides the following:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
The DOTD states that Robert Lipp (“Mr. Lipp”) was retained by Mr. McReynolds to provide expert testimony in the field of Civil Engineering; however, Mr. McReynolds’ attorneys ultimately tendered him as an expert in roadway design, maintenance, mechanical engineering, and accident reconstruction. Therefore, the DOTD contends with regard to the question of DOTD’s negligence in maintaining Highway 23, Mr. Lipp did not have the professional experience to make these assessments. Alternatively, Mr. McRey-nolds maintains that all of Mr. Lipp’s testimony pertained to engineering principles, including measurements of distances and forces and other mathematical calculations that were within his professional opinion. We agree.
We do not find any reasons for excluding the testimony of Mr. Lipp, given the limited nature of his testimony and the fact that he refrained from making any 1 ^conclusory statements as to the negligence of the DOTD in the design of the roadway. We find all of this information was helpful to the trial judge in reaching his decision.

CONCLUSION

For these reasons, we affirm the decision of the trial court.

AFFIRMED.