1 .DENNIS R. BAGNERIS, SR., Judge.
This appeal arises from a lawsuit filed against the defendant-appellant, Rhodes Funeral Home (“Rhodes”), and its liability insurer, Lafayette Insurance Company (“Lafayette”), for damages that the plaintiff-appellee, Ms. Dora Brisbon[1] (“Ms.Brisbon”), sustained when she allegedly tripped and fell on carpet on the entrance steps of the funeral home. The trial court judge found in Ms. Brisbon’s favor. It is from this judgment that the defendant-appellants now appeal. We affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

On August 2, 1997, Ms. Brisbon went to the Washington Avenue location of the Rhodes Funeral Home to attend' a funeral. While descending the stairs located at the funeral home entrance, Ms. Brisbon allegedly fell and tripped on loose carpet located on the stairs. This fall resulted in injuries Uto Ms. Brisbon’s legs, chest, stomach, back, knees and other parts of her body.
Ms. Brisbon filed a suit for damages against Rhodes Funeral Home and Lafayette Insurance Company, Rhodes’ liability insurer. On February 15, 2000, trial was held in this matter. On March 16, 2000, the trial court judge issued written reasons for judgment in which he found Rhodes 100% liable for Ms. Brisbon’s damages, and he awarded Ms. Brisbon $14,000.00 in general damages and $862.27 for past medical expenses, totaling $14,862.27 in damages. The defendants-appellants timely filed this appeal.

LAW AND DISCUSSION

Testimony Adduced at Trial Dora Brisbon

On direct examination Ms. Brisbon testified that her date of birth is July 27, 1919, which made her eighty (80) years of age at *586 the time of trial. Ms. Brisbon stated that on August 2, 1997, she went to the Washington Avenue location of Rhodes Funeral Home for the funeral of a friend. She also stated that as she was descending the stairs of the funeral home entrance, her foot got caught up in a “bunch” in the carpet, and she fell straight down and ended up turned over on her side. Ms. Brisbon testified that soon after her fall, Loretta Carter (“Ms.Carter”) and Virginia Carter Wilson (“Ms.Wilson”) both came over to her and asked her if she was hurt. UShe testified that an “undertaker man” (Nelson Duplessis) also came over and told her to lie down and to refrain from moving. Ms. Brisbon did so. After a short period, this man helped her up and sat her in a chair. He told Ms. Brisbon that he could take her to a doctor. Ms. Brisbon testified that she declined his offer and called her grandson, who later met her at the funeral home and subsequently took her to Tulane Medical Center’s emergency room. Ms. Brisbon further testified that she did not tell the man what caused her to fall, and she confirmed that there was carpet on the stairs at the time of her fall.
On cross-examination, Ms. Brisbon testified that as she was descending the en-tranceway stairs, she did not notice or hold the handrailing located on the steps; nor did she look at these steps before the accident. She did not notice the color of the carpet, and she said that she did not remember whether or not this whole set of steps was carpeted. Ms. Brisbon testified that the “bunch” in the carpet that caused her to trip was not a big bunch but, rather, was just “kind of pushed up like that.”

Loretta Carter

Ms. Carter testified that her date of birth is August 26, 1949, which made her fifty (50) years of age at the time of trial. She stated that she is a special education teacher at Fortier High School. Ms. Carter testified that on August 2, 1997, she was at the Washington Avenue location of Rhodes | ¿Funeral Home for the funeral of her husband’s nephew. Ms. Carter stated that she and Ms. Brisbon are both members of the same church.
With regard to the accident, Ms. Carter testified that she saw Ms. Brisbon as she was in the process of falling, and she saw Ms. Brisbon eventually fall completely on to the floor. Ms. Carter stated that she was unsure as to whether or not all of the steps in question were carpeted, but she did remember that there was carpet on the last step. Ms. Carter further stated that she remembered the stairs in question because when she herself came down the stairs, she almost fell on the same carpet. She stated: “It was the carpet. My foot felt like the floor should have been even but it kind of slanted and went back down, and my foot got caught. The top of my foot got caught somewhere in that area.”
On cross-examination, Ms. Carter once again stated that she could not remember if there was any carpet above the last step.

Virginia Carter Wilson

On direct examination, Ms. Wilson testified that she attended the same funeral on August 2, 1997, and she witnessed Ms. Brisbon’s fall. She explained that she was talking at the time and “out of the corner” of her eye, she saw “somebody” fall down the stairs. She testified that she later went to Ms. Brisbon after her fall. Like Ms. Carter, Ms. Wilson testified that she herself almost fell when she was coming down these same steps. When asked why she almost fell, Ms. Wilson replied, “I keep thinking it’s | .¡something at the door. It’s not level ... I came off the stair and either it goes up or it goes down. But the carpet is thick so you can’t see it’s going up or down.” Ms. Wilson stated that she did not remember whether or not the stairs were carpeted, but she did remem *587 ber that there was carpet on the “bottom” of the stairs.
On cross-examination, Ms. Wilson testified that she held on to the handrail when she was descending the stairs.

Duplain Rhodes

Mr. Rhodes testified that Rhodes Funeral Home employed him as its President. When shown various photographs of the steps in question, Mr. Rhodes stated that the date at the bottom of each of the photographs is August 13, 1997, indicating that the photographs were taken approximately eleven (11) days after Ms. Bris-bon’s alleged accident. Mr. Rhodes stated that he did not witness the accident. He also stated that the steps in question had never been carpeted. Rather, the steps were marble/terrazzo, and the only area in this funeral home location that had always been carpeted was the floor of the facility, which was located beneath the entrance-way steps.

Kathleen Rhodes Astorga

On direct-examination, Ms. Astorga testified that Rhodes Funeral Home employs her as the facility manager. When shown photographs of the steps in question, Ms. Astorga testified that she did not remember when those photographs were taken. She denied that there was ever carpet on | fithose steps, and she noted that she is in charge of housekeeping that whole area, including the steps.
On cross-examination, Ms. Astorga initially stated that she first became aware of Ms. Brisbon’s alleged accident only after Ms. Brisbon filed suit. Once Ms. Bris-bon’s counsel pointed out that her Answers to Interrogatories indicated that she knew about Ms. Brisbon’s accident before Ms. Brisbon filed suit, Ms. Astorga changed her story and attributed her mistaken initial answer to her “confusion”. Ms. Astorga denied that the steps in question were uneven. She testified that they “checked” the steps after a flood when they had the lobby redone. She said that this check also included having the Abry Brothers come in to measure the steps; having the carpet redone; and having railings put up. Ms. Astorga confirmed that the Abry Brothers are in the shoring business, and she confirmed that this meant that the Abry Brothers shore up buildings that are unlevel. She again denied that the steps in the Washington Avenue location were unlevel. She stated that the reason they had the Abry Brothers come in to do some work at the location was because twenty (20) years ago, the building was “mudjacked” after a flood. Ms. Astorga confirmed that after this same flood, the carpets in the building were replaced by Modern Flooring.

Gloria Harness

Ms. Harness testified that she was a former employee of Rhodes who worked at the Washington Avenue location for sixteen (16) years as a |7limousine driver. Ms. Harness stated that the stairs in question had never been carpeted, and the only carpet at that location is located beneath the stairs, not on the stairs or above them in the entrance area. Ms. Harness stated that on the day of the alleged accident, she was working the desk, answering phones. She testified that she did not see Ms. Brisbon fall, but she knew that there was a fall because another worker “screamed and yelled”, and “Nelson helped her up.”
On cross-examination, Ms. Harness testified that she checked the stairs after Ms. Brisbon fell, and everything was “normal”.

Nelson Duplessis

On direct examination, Mr. Duplessis testified that he was a former employee of Rhodes, who had been employed as a chauffeur there for approximately eleven (11) years. Mr. Duplessis stated that the stairs of the Washington Avenue location *588 of Rhodes do not and never have had carpet on them.
Mr. Duplessis testified that he “vaguely” remembered Ms. Brisbon falling. After he heard her scream, he went over to assist her by trying to help her up from the floor. He asked her over and over if he could get a paramedic or an ambulance for her, but she refused. Mr. Duplessis stated that Ms. Brisbon told him that she “was fine” and that she tripped over her “own feet.” He further testified that Ms. Brisbon never at any time complained that something was wrong with the stairs. Mr. Duplessis stated |sthat he even looked at the stairs that day because the stairs are always “brushed off’ before a funeral service. He did not see anything that day on the stairs that could have caused someone to fall.
On cross-examination, Mr. Duplessis testified and Ms. Harness prepared an accident report for this accident. He stated that the carpet in the Washington Avenue location had been replaced, but he did not recall when this replacement occurred. When shown the photographs of the stairs in question, he stated that he did not know who took the pictures, and he did not know when they were taken.

LIABILITY

In their first two assignments of error, Rhodes and Lafayette’s counsel argues that the trial court erred in finding liability on their part because Ms. Brisbon failed to offer any evidence to establish the duration of time that the alleged defect in the carpet was present. Furthermore, counsel for Rhodes and Lafayette argue that the trial court erred in finding that there was any carpet on the steps where Ms. Brisbon claimed to have fallen.
In response, Ms. Brisbon’s counsel argues that the trial court judge was not manifestly erroneous and did not abuse his discretion by finding Rhodes and Lafayette responsible for its fault for the condition of their stairs, which created an unreasonably dangerous condition and caused Ms. |aBrisbon’s fall and resulting injuries. Counsel also argues that the trial court judge was not erroneous or clearly wrong when he found liability where the preponderance of the evidence presented at trial suggested that there was in fact carpet on the stairs where Ms. Brisbon fell. We agree that the trial court judge was not manifestly erroneous or clearly wrong in finding liability on the part of the defendant-appellants.
When findings of fact are based upon decisions regarding the credibility of witnesses, respect should be given to those conclusions, for only the fact finder can be aware of the variations in demeanor and tone of voice which bears so heavily on understanding and believing what is said. The reviewing court is mandated not to substitute its own evaluations and inferences for those of the trier of fact. McReynolds v. State ex rel. Dept. of Transp. and Development, 99-2905 (La.App. 4 Cir. 6/14/00) 765 So.2d 447, writ denied 2000-2111 (La.10/6/00), 771 So.2d 90; Bolton v. Louisiana State University Medical Center, 601 So.2d 677 (La.App. 2 Cir.1992); Pereira v. Louisiana Coca-Cola Bottling Co., 620 So.2d 315 (La.App. 4 Cir.1993). When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. McReynolds, supra; Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
| mA careful review of the trial transcript reveals that three people — Ms. Brisbon, Ms. Carter, and Ms. Wilson — testified that the steps in question were carpeted. Four *589 people — Duplain Rhodes, Kathleen Rhodes Astorga, Gloria Harness, and Nelson Du-plessis — all either present or former employees of Rhodes, testified that the steps were not carpeted. Photographs of the steps in question show no carpet on the steps. These photographs were taken eleven (11) days after the alleged accident. There was definitely a conflict in testimony. The trial court judge chose to believe Ms. Brisbon and her witnesses. In his Written Reasons for Judgment, the trial court judge stated as follows:
“In light of the aforementioned testimony, the court finds defendant’s case unpersuasive for several reasons. First, defendant introduced copies of pictures taken of the staircase 11 days after plaintiffs alleged accident occurred; however, plaintiff failed to provide a proper foundation to authenticate this evidence. Additionally, defendant failed to provide sufficient evidence or testimony that the staircase in question was not carpeted at the time of the accident. Second, all of the defendant’s witnesses corroborated with the fact that plaintiff actually fell on the stairway. The major question of fact before the court is whether the plaintiff tripped over carpet on the staircase. Based on the evidence presented, this court finds that defendant failed to sufficiently refute the sound testimony of plaintiffs witnesses that the stairway was carpeted and prove that plaintiff did not trip on stairway ... on the day of the accident.”
After a careful review of the record evidence, we find that the trial court judge’s decision regarding credibility was reasonable and should not be disturbed on appeal.
With regard to the issue of liability, the trial court judge’s written reasons are unclear as to whether he applied a theory of negligence or strict | pliability to find the defendant-appellant’s liable. Ms. Bris-bon’s counsel argues that they are liable under both theories. We find that the defendant’s were liable but only under a theory of strict liability, as opposed to negligence.
In Jones v. Peyton Place, Inc., 95-0574 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, this Court dealt with liability for negligence and stated as follows:
It is well established that under our law, “the owner of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition or warn potential victims of its existence. The plaintiff must prove the owner knew or should have known of the risk. The property owner is not the insurer of the premises, but must act reasonably in view of the probability of injury.” Wiggins v. Ledet, 94-0485, p. 6 (La.App. 4th Cir.9/29/94), 643 So.2d 797, 801 (emphasis added) (citations omitted). The mere existence of a hazard does not create liability for negligence; instead it must be shown that the condition was present long enough for the defendant to discover and remedy the problem. DeGruy v. Orleans Parish School Bd., 573 So.2d 1188, 1192 (La.App. 4th Cir. 1991)....
Based on this reasoning and our review of the record, we find that Ms. Brisbon failed to prove that the condition that caused her to fall and injure herself was present long enough for Rhodes to discover and remedy the problem. Therefore, we do not find that Rhodes was liable for Ms. Brisbon’s injuries under a theory of negligence.
We do find, however, that Rhodes was hable under a theory of strict liability. In Jones, supra, we also dealt with the theory of strict liability and stated as follows:
*590 While a claim for negligence against the custodian of defective premises requires proof of the defendant’s knowledge of the alleged defect, liability under Civil Code article 2817 may be established by showing only that: (1) the defendant had |12the care, custody and control of the thing causing harm, (2) a vice or defect in the thing created an unreasonable risk of harm, and (8) the plaintiffs injuries were caused by that vice or defect. Fontenot v. Fontenot, 93-2479, p. - (La.4/11/94), 635 So.2d 219, 221.
In the instant ease, the first element is established by the testimony of Mr. Duplain Rhodes, the President of Rhodes Funeral Home, who acknowledged that Rhodes did indeed own the Washington Avenue location of the funeral home in which the alleged accident took place.
With regard to the defect’s creating an unreasonable risk of harm, we noted in Jones, supra, that our Supreme Court stated:
... it has been suggested that a useful approach in a case under article [sic] 2317 might be to ask the following: If the custodian of the thing is presumed to have knowledge of its condition before plaintiffs injury, would he then have been acting reasonably by maintaining and exposing others to it. Entrevia v. Hood, 427 So.2d 1146, 1149-50 (La.1983) (citations omitted). Under this analysis, the court must not only “balance the likelihood and magnitude of harm against the utility of the thing,” but must also consider whether the duty imposed upon the custodian was meant to prevent the type of harm which occurred. Oster v. Dept. of Transportation & Development, 582 So.2d 1285, 1289 (La.1991) (footnote and citations omitted).
In the case at bar, Rhodes’ duty to keep its stairways free of hazards is meant to prevent the type of fall that occurred here. These steps served as the main entrance-way to the viewing rooms and, as such, are subject to traffic. Anything that interferes with this traffic gives rise to an increased probability of harm. Buckled carpeting definitely interferes with traffic and leads to a higher chance of someone injuring himself or herself if they trip and fall, especially when it is located on steps. In short, using the analysis suggested by our Supreme Court and assuming that Rhodes knew of the carpet’s condition on the entranceway steps, it was not reasonable to allow it 113to remain in this condition without providing any warning to the funeral home’s patrons. We therefore find that this defect in the carpeting presented an unreasonable risk of harm.
With regard to causation, the third and final element of our strict liability analysis, we find that the evidence presented at trial in this matter proved that Ms. Brisbon’s injuries were caused by her fall. At trial, defense counsel stipulated to all of Ms. Brisbon’s medical records pertaining to her injuries from this accident. A careful review of these records indicates that Ms. Brisbon’s injuries were a result of her fall. Defense counsel offered no other evidence to refute this. Therefore, Rhodes is strictly liable to Ms. Brisbon for the injuries she sustained.

COMPARATIVE FAULT

In their third assignment of error, counsel for defendant-appellants argues that the trial court erred in failing to find contributory fault on the part of Ms. Brisbon due to her failure to pay attention to where she was walking and her failure to use the handrails on the steps.
In response, plaintiff-appellee’s counsel argues that the trial court did not err *591 because the defendants failed to carry their burden of proof regarding their defense of comparative fault. We agree.
In Trahan v. Savage Industries, Inc., 96-1289, (La.App. 3 Cir.1997), 692 So.2d 490, our brethren in the Third Circuit noted that:
“... comparative fault is an affirmative defense. As such, the party asserting the defense bears the burden of proving by a preponderance of the evidence that the negligence of the other party was a cause in fact of the accident.” Branch v. City of Lafayette, 95-298 (La.App. 3 Cir. 10/4/95), 663 So.2d 216.
| uAfter a careful review of the record, we find that defendant-appellants did not bear the burden of proving by a preponderance of the evidence that Ms. Bris-bon’s negligence was a cause-in-fact of the accident. A review of the photos of the steps in question reveals that there were only three steps leading down into the area that contained the viewing rooms. While it is true that Ms. Brisbon testified that she did not use the handrails when she was descending these three steps, it is not negligent for a person walking down such a short number of steps to fail to use the handrails. This assignment of error has no merit.

DAMAGES

In their final assignment of error, Rhodes and Lafayette’s counsel argues that the trial court judge erred in assessing the damage amount because it was excessive and not supported by the evidence.
In response, Ms. Brisbon’s counsel argues that the trial court’s award was not so excessive that it “shocks the concious.” Once again, we agree.
Our Supreme Court discussed appellate review of damage awards in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993):
[ T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
* * * *
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much 11Rdiscretion” of the trier of fact... .Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
Applying these standards, we find no abuse of discretion in the award of $14,000.00 in general damages and $862.27 for past medical expenses, totaling $14,862.27 in damages. At trial in this matter, counsel for defendant-appellants stipulated to Ms. Brisbon’s medical records. A review of these records illustrates that Ms. Brisbon treated on August 4, 1997, one day after the accident. At that time, she was diagnosed with neck, back, and finger sprains, as well as a left knee contusion. Ms. Brisbon later received treatment for her injuries five more times over a seven month period. A review of similar cases reveals that this damage award is not excessive. The trial court judge did not abuse his “much discretion” when he awarded this amount. This assignment of error has no merit.

*592
CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

AFFIRMED.

. In various documents pertaining to this case, the plaintiff-appellee is alternately referred to as "Ms. Brisbon” and "Ms. Bris-born”. For purposes of this appeal, we will refer to her as "Ms. Brisbon”.